# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1219

_____

Jesus Cuellar-Aguilar; Andres Andrade-Quijano; Francisco Bernardo-Gonzalez; Andres Contreras-Hernandez; Jose Daniel Cuellar-Aguilar; Frederik Hernandez-Luciano; Narciso Hernandez-Zavaleta; Porfirio Hernandez-Zavaleta; Natanael Herrera-Barreda; Javier Lopez-Celis; Angel Martinez-Damaso; Esau Morales-Toledano; Crisanto Ortiz-Ortiz; Samuel Ronquillo-Juarez; John Swart; Enrique Vasquez-Alejo; Juan Manuel Vasquez-Alvarez; Shanna Powell; Shenene Swanepoel, each individually and on behalf of all other persons similarly situated

*Plaintiffs - Appellants*

v.

Deggeller Attractions, Inc.

*Defendant - Appellee*

------------------------------

Advocates for Human Rights, et al.

*Amicus on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 22, 2015
Filed: December 15, 2015

_____

Before RILEY, Chief Judge, BYE and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Appellants are nineteen workers who were employed by Deggeller Attractions, Inc. ("Deggeller"), a Florida corporation that operates a traveling carnival in Arkansas and various other states. Following their employment, the workers brought a class action lawsuit on behalf of themselves and similarly situated Deggeller employees. The workers alleged that Deggeller had breached its employment contracts and violated the Arkansas Minimum Wage Act by underpaying its workers. The workers further alleged that Deggeller fraudulently had under-reported the workers' income to the Internal Revenue Service ("IRS"), in violation of 26 U.S.C. § 7434. The district court dismissed the breach of contract and tax fraud claims under Federal Rule of Civil Procedure 12(b)(6). The court then declined to exercise supplemental jurisdiction over the Arkansas minimum-wage claim. Finally, the court denied the workers' motion to alter judgment, in which the workers sought to file a second amended complaint. We reverse the district court's dismissal of the breach of contract and tax-fraud claims and vacate its decision not to exercise supplemental jurisdiction over the Arkansas minimum wage claim.

I.

In their complaint, the workers alleged that Deggeller recruited, hired, and employed them under the H-2B temporary foreign worker program. H-2B visas allow foreign citizens to work temporarily for non-agricultural American businesses. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(b). This type of visa became available as a result of the Immigration Reform and Control Act of 1986, through which Congress divided the H-2 program to provide either H2-A visas for agricultural work, *id.* at § 1101(a)(15)(H)(ii)(a), or H-2B visas for non-agricultural work, *id.* at § 1101(a)(15)(H)(ii)(b). A business seeking to import H-2B workers must obtain a

temporary-employment certification from the Department of Labor. 20 C.F.R. § 655.20. To receive certification, the business first must demonstrate that it has worked with the relevant state agency to recruit U.S. workers at the wage determined by the National Prevailing Wage Center to represent the prevailing wage for the position in the area. *Id.* at § 655.10-49. In addition, the Department of Labor must post the job offer information in an electronic registry for public examination. 20 C.F.R. § 655.34. Only if insufficient numbers of U.S. workers are available will the Department of Labor grant the employer a certification to import foreign workers. *Id.* at § 655.51. As a condition of this certification, the law mandates that the employer pay these foreign workers no less than the prevailing wage at which the employer recruits U.S. workers. *Id.* at § 655.20. The purpose of the prevailing wage requirement is to prevent foreign workers from adversely affecting American workers seeking to perform the same work. *See id.* at § 655.0(a)(1).

The workers alleged that between 2009 and 2013, Deggeller applied for and received certifications to hire foreign workers as ride operators, food servers, game attendants, and ticket collectors at its carnivals. In order to obtain these certifications, the workers alleged, Deggeller promised the Department of Labor that it would pay any foreign workers it hired at least the prevailing wage applicable to these positions in each location in which its carnival operated.

The workers further alleged that after Deggeller received the necessary certifications, the company's agents recruited both Mexican and South African workers to come to the United States to perform the work described in the certifications. According to the complaint, Deggeller paid these workers a flat weekly rate regardless of the number of hours they worked. During the vast majority of workweeks, the workers alleged, this payment represented less than the amount due to the workers under the Department of Labor's prevailing wage and less than the amount mandated by the Arkansas minimum wage law. According to the workers,

-3-

Deggeller further eroded the workers' wage rate by refusing to pay them overtime and by charging them more for housing than Deggeller paid to provide the facilities.

The workers brought three claims against Deggeller. First, they brought a breach of contract claim under Arkansas common law, alleging that Deggeller had violated the wage term of the workers' employment contracts by paying less than the hourly prevailing wage mandated by 20 C.F.R. § 655.20. Second, they claimed that Deggeller had willfully filed W-2 forms containing fraudulent information regarding the workers' earnings, in violation of 26 U.S.C. § 7434. Third, the workers claimed that Deggeller had paid them less than the Arkansas minimum wage. The district court dismissed the breach of contract and tax fraud counts under Rule 12(b)(6), and as a result of those dismissals, the court declined to exercise supplemental jurisdiction over the Arkansas minimum-wage claim. *See* 28 U.S.C. § 1367(c)(3) ("The district court[] may decline to exercise supplemental jurisdiction . . . if [it] has dismissed all claims over which it has original jurisdiction."). Finally, the court rejected the workers' request for leave to file a second amended complaint. The workers now appeal.

II.

We review *de novo* a district court's dismissal for failure to state a claim, taking all facts alleged in the complaint as true. *Trooien v. Mansour*, 608 F.3d 1020, 1026 (8th Cir. 2010). Rule 12(b)(6) allows a defendant to move for dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the

-4-

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In making this determination, courts must draw all reasonable inferences in favor of the plaintiff. *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009).

## A.

In this appeal, the workers argue that the district court erred in dismissing their breach of contract claim. The district court based this dismissal on its finding that no contract existed between the workers and Deggeller. The court observed that the federal regulations governing the H2-B program lack any provision analogous to the H-2A program's statement that, in the absence of a written contract, "the required terms of the job order and application . . . shall be the work contract." 29 C.F.R. § 103(b). If the H-2B applications did not constitute employment contracts, the court determined, then the workers lacked a contractual relationship with Deggeller.

In determining the existence of a state-law contract, however, we must look to Arkansas law, rather than the pronouncements of federal agencies. *Witzman v. Gross*, 148 F.3d 988, 990 (8th Cir. 1998) (recognizing that federal courts exercising supplemental jurisdiction over state-law claims must apply the substantive law of the forum state); *see also Cordova v. R & A Oysters, Inc.*, ---F. Supp. 3d---, 2015 WL 1934389 at *6 (S.D. Ala. Apr. 29, 2015) (declining to find that "a federal agency's thoughts on whether a contract exists does or could preclude the existence of a contract under state law"). In order to state a claim for breach of contract under Arkansas law, the workers needed to allege (1) that they had employment contracts with Deggeller, (2) that Deggeller breached the terms of those contracts, and (3) that Deggeller's breach caused the workers to incur damages. *See Ultracuts Ltd. v. Wal-Mart Stores, Inc.*, 343 Ark. 224, 231-32, 33 S.W.3d 128, 133 (2000).

With respect to the first element, the workers' allegations describing their status as Deggeller's employees were sufficient to plead that they had contracts with the company. Under Arkansas law, "[t]he [employment] relationship . . . may be created . . . by conduct, which shows that the parties recognize that one is the employer . . . and that the other is the employee," *ConAgra Foods, Inc. v. Draper*, 372 Ark. 361, 366, 276 S.W.3d 244, 249 (2008), and this relationship "is contractual in nature," *Turner v. Ark. Ins. Dep't*, 297 F.3d 751, 756 (8th Cir. 2002). The complaint's allegations demonstrated that the workers received offers to work for Deggeller and that they accepted those offers by traveling to the United States to perform the offered work. Those facts were sufficient to establish that a contractual relationship existed between Deggeller and the workers under Arkansas law.

In addition to pleading that they had a contractual relationship with Deggeller, the workers also needed to plead that Deggeller breached the terms governing that relationship by failing to pay them the prevailing wage. In order for a contract term to be enforceable, a plaintiff usually must allege that the parties to the contract reached a "meeting of the minds" with respect to that particular term. *Alltel Corp. v. Sumner*, 360 Ark. 573, 576, 203 S.W.3d 77, 80 (2005).[1] Under Arkansas law, however, a "meeting of the minds" is not the exclusive mechanism for establishing the terms of a contract. Arkansas courts have recognized that "the law in effect at the time a contract is made forms a part of the contract as if it had been expressed in the

---

[1] The workers argue that such a "meeting of the minds" occurred because Deggeller's agents did in fact offer them the prevailing wage, but the workers did not directly allege this fact in their complaint. The workers alleged only that Deggeller promised the Department of Labor that it would pay the prevailing wage when the company applied for H-2B visas, that Deggeller recruited and hired the workers "pursuant to" those visas, and that Deggeller subsequently failed to pay the workers the prevailing wage. However, we need not decide whether these allegations were sufficient to support a reasonable inference that Deggeller offered the workers the prevailing wage. As described below, we are confident that courts applying Arkansas law would import the prevailing wage into the contract as a matter of law.

contract." *Woodend v. Southland Racing Corp.*, 337 Ark. 380, 384, 989 S.W.2d 505, 507 (1999); *see also Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 130 (1991) ("Laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms.") (quoting *Farmers' & Merchs.' Bank of Monroe v. Fed. Reserve Bank of Richmond*, 262 U.S. 649, 660 (1923)). Adhering to this principle, the Arkansas Supreme Court read a state salary regulation into the terms of teacher contracts, overriding the teachers' acceptance of a lower salary from their school district. *Fennell v. Sch. Dist. No. 13*, 208 Ark. 620, 623-24, 187 S.W.2d 187, 189 (1945). Although Arkansas courts have not yet applied this rule to the Department of Labor regulations at issue here, most courts facing this question in other jurisdictions have held that H-2, H-2A, and H-2B workers can enforce a federally mandated wage rate under state contract law. *See, e.g.*, *Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1341 (5th Cir. 1985) (adopting H-2 workers' argument that "because [the H-2] regulations have the force of law, these terms were part of [the workers'] employment agreement"); *Moodie v. Kiawah Island Inn Co., LLC*, ---F. Supp. 3d---, 2015 WL 5037038, at *12 (D.S.C. Aug. 4, 2015) ("[T]he law and regulations applicable to the H-2B program at the time were part of the contract."); *Frederick Cty. Fruit Growers Ass'n v. Martin*, 703 F.Supp. 1021, 1031 (D.D.C. 1989) ("The terms of [an H-2A] job clearance order which reflect DOL requirements become a part of the employment contract as a matter of law" even where "none of the Farmworkers saw or relied upon the promise of higher wages."), *aff'd* 968 F.2d 1265 (D.C. Cir. 1992).[2]

---

[2] Deggeller's contention that *Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696, 717-19 (E.D.N.C. 2009) held to the contrary is incorrect. *Garcia* decided only that H-2B workers had no contractual right to forty hours per week of work when Department of Labor regulations did not "establish[] an actual obligation of the number of hours that must be guaranteed each week." *Id.* at 718. The court distinguished between the non-binding minimum-hours guidelines and the wage requirements, which "guaranteed [the workers] that their pay will be consistent with the prevailing wage for the assigned locality." *Id.* at 717. *But see Bojorquez-Moreno*

Like a minimum-wage law, the Department of Labor regulations imposed upon Deggeller a legal obligation to pay its H-2B employees no less than the prevailing wage. *See* 20 C.F.R. § 655.20. In light of this legal duty, we hold that the terms of the labor certification applications, including the agreement to pay the prevailing wage, represented "the law in effect at the time [the] contract[s] [were] made," *Woodend*, 989 S.W.2d at 507, and therefore, under Arkansas law, these terms form a part of the workers' contracts. As a result, the workers' allegation that Deggeller failed to pay the prevailing wage stated a valid claim for breach of their employment contracts.

B.

The workers also contend that the district court erred in dismissing their claim for statutory damages under 26 U.S.C. § 7434. This statute allows a plaintiff to "bring a civil action for damages" against any party that "willfully files a fraudulent information return" on the plaintiff's behalf. 26 U.S.C. § 7434(a). According to the statute, a defendant found liable in any such action will owe to the plaintiff damages "in an amount equal to the greater of $5,000 or the sum of--(1) any actual damages sustained by the plaintiff . . . (2) the costs of the action, and (3) in the court's discretion, reasonable attorneys' fees." *Id.* at § 7434(b).

The workers' claim under this statute alleged that in 2009 and 2010 Deggeller fraudulently under-reported some of its workers' earnings on the workers' W-2 forms in order to reduce the business's tax obligations under the Federal Insurance Contributions Act, 26 U.S.C. § 3102, and the Federal Unemployment Tax Act, 26 U.S.C. § 3301. The district court dismissed the workers' claim because the court

_____

*v. Shores & Ruark Seafood Co., Inc.*, 92 F. Supp. 3d 459, 467 (E.D. Va. 2015) (relying on reasoning similar to *Garcia*'s to dismiss a breach of contract claim in which the workers alleged that the prevailing wage included on H-2B visa applications constituted a term of the workers' contracts).

found that a required element of such a claim was an allegation of actual damages, and the workers had failed to allege that any actual damages had resulted from Deggeller's fraudulent filing.

We previously have held that where a federal statute provides for either statutory damages or actual damages, plaintiffs who fail to allege actual damages nonetheless satisfy both the injury in fact and redressability requirements of Article III standing by suing for statutory damages. *Hammer v. Sam's E., Inc.*, 754 F.3d 492, 498-500 (8th Cir. 2014), *cert. denied*, 135 S. Ct. 1175 (2015). In *Hammer*, we recognized that plaintiffs bringing claims under the Fair and Accurate Credit Transactions Act, 15 U.S.C. § 1681c(g)(1), demonstrated an injury-in-fact "solely by [alleging] the invasion of a legal right that Congress created." 754 F.3d at 498 (emphasis omitted); *see also Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820-21 (8th Cir. 2015) (applying the same principle to claims brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227). We further held that the availability of statutory damages showed that the plaintiffs' injury was redressable. *Hammer*, 754 F.3d at 499.

Our reasoning in *Hammer* informs our decision here. Congress created a statutory right for employees to have accurate tax documents filed on their behalf, and it provided that employers who violated that right would be liable to the employee "in an amount equal to the greater of $5,000 *or* the sum of" any actual damages, costs, and attorneys' fees. 26 U.S.C. § 7434(b) (emphasis added). Congress's decision to "describe[] these permissible damages in the disjunctive" indicates that a plaintiff "can bring a claim to recover statutory damages . . . as an alternative to a claim for actual damages." *Hammer*, 754 F.3d at 500. Adhering to our decision in *Hammer*, we must "reject [the] invitation to foreclose statutory damages in the absence of actual damages when the language of the [statute] dictates otherwise." *Id*. Because the workers alleged that Deggeller intentionally filed fraudulent tax documents on their behalf, their complaint stated a claim for statutory damages under 26 U.S.C. § 7434(b).

## III.

The workers' complaint sufficiently alleged that they had employment contracts with Deggeller, the terms of which included the Department of Labor's prevailing wage. The complaint therefore stated a valid claim that Deggeller breached those contracts by failing to pay the required wage. The workers also stated a valid claim for statutory damages under 26 U.S.C. § 7434(b). Accordingly, we reverse the district court's Rule 12(b)(6) dismissals of these claims and vacate its decision under 28 U.S.C. § 1367(c)(3) not to exercise supplemental jurisdiction over the Arkansas minimum wage claim.

_____