[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12974

_____

JOSE PEREZ,
ALFREDO SANTOS,
DOUGLAS RICHEY,
on behalf of themselves and all others
similarly situated,

                                                    Plaintiffs-Appellants,

*versus*

OWL, INC.,
d.b.a. Owl Inc. Transportation,

                                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:17-cv-01092-CEM-DAB

———————————————

Before WILSON, GRANT, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

A group of drivers sued their employer, Owl, Inc., for breach of contract and violations of the Fair Labor Standards Act. They argued that they were not paid the correct hourly rate under their employment contract or overtime wages under the FLSA. The district court granted summary judgment for Owl on the breach of contract claim and granted Owl's motion in limine that limited the damages available to the drivers for the FLSA claim. The parties then entered, and the district court approved, a settlement on the FLSA claim under *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), resulting in a $350,000 judgment in favor of the drivers. The drivers timely appealed the district court's summary judgment and motion in limine rulings.

This appeal requires us to first decide two jurisdictional issues: one about our appellate jurisdiction under 28 U.S.C. § 1291 and another about whether the drivers have standing to challenge the district court's rulings on appeal. We hold that we have Section 1291 jurisdiction to hear this appeal because the district court entered a final judgment on the merits of all the drivers' claims. We also hold that, even though the drivers entered a settlement

agreement on their FLSA claim, they still have standing to challenge the district court's ruling on the motion in limine that dictated the damages available for that claim.

Assured of our jurisdiction, we must then decide two merits issues: first, whether a Florida breach of contract claim for back pay necessarily imports the prevailing wage under the Service Contract Act, 41 U.S.C. § 6701 *et seq.*, and second, whether the "regular rate" under the FLSA may include the prevailing wage required by the SCA. We answer these questions "no" and "yes." Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

**I.**

*A.*

Owl, Inc., contracts with the Department of Veterans Affairs to transport veterans to and from medical appointments. Owl also contracts to pay its employees an hourly rate to provide those services. Owl's contract with the federal government is subject to the Service Contract Act, which requires Owl to pay its drivers a prevailing wage based on the drivers' job classification issued by the United States Department of Labor. 41 U.S.C. § 6703(a)(1); 29 C.F.R. § 4.5(a). Owl and its drivers disagree about the proper classification for the drivers but agree that they are either taxi drivers, shuttle bus drivers, or ambulance drivers. The DOL mandates that taxi drivers be paid around $11 per hour, shuttle bus drivers are paid around $15 per hour, and ambulance drivers are paid around $18 per hour.

When Owl was initially awarded its contract with the VA in 2009, it classified its drivers as taxi drivers and entered oral, at-will employment contracts with its drivers to pay them around $11 per hour. In 2014, the Wage and Hour division of the DOL investigated Owl's classification and determined that Owl drivers should be classified as shuttle bus drivers and paid accordingly. Owl sought review, and the DOL issued a final decision in 2016 affirming its classification of the drivers as shuttle bus drivers. Owl appealed to the DOL Administrative Review Board, which also affirmed the shuttle bus driver classification. *MLB Transp., Inc. & Owl, Inc. v. Adm'r, Wage & Hour Div.*, No. 2016-0078, 2020 WL 1151010 (ARB Feb. 13, 2020). Although Owl asserts that the wage determination proceedings are still ongoing, it has not sought review of that decision in federal court or otherwise challenged the 2020 DOL Administrative Review Board decision.

### B.

A class of Owl drivers sued Owl in 2017 seeking backpay and overtime payments based on Owl's misclassification of the drivers as taxi drivers. The drivers argued that (1) Owl breached its employment contracts with the drivers under Florida law by failing to pay its drivers the correct wage under the SCA, and (2) Owl violated the FLSA when it failed to pay the drivers overtime. The drivers asserted that the FLSA overtime wages should be based on a higher rate than the taxi driver rate that Owl paid. Owl moved for partial summary judgment on the breach of contract claim. Owl also filed a motion in limine to prohibit the drivers from presenting

evidence of any rate other than the rate they were actually paid, i.e., to exclude any evidence of the higher shuttle bus driver rate.

The district court granted Owl's motion for partial summary judgment on the breach of contract claim. It reasoned that although the SCA might incorporate the mandated wage into employment contracts silent on the matter, the Owl drivers contracted for "an explicit rate of pay"—the taxi driver rate. The district court also explained that enforcing the higher SCA wage through a state breach of contract claim "would create a private right of action under the SCA" even though none exists. It concluded that Owl "is entitled to judgment in its favor as to Plaintiffs' breach of contract claim" and stated in a footnote that it "will enter judgment at the conclusion of these proceedings" on Count II, the drivers' breach of contract claim.

The district court also granted Owl's motion in limine to exclude evidence of any rate other than the rate Owl actually paid its drivers for the FLSA overtime claim. The court reasoned that, in light of its rejection of the drivers' breach of contract claim, damages for the FLSA overtime claim were limited to one-and-a-half times the rate the drivers received, even if they were due a higher hourly rate under the SCA. The district court set the overtime claim for trial with the primary area of dispute being the number of overtime hours the drivers worked.

The parties later reached a settlement agreement on Count I, the FLSA overtime claim. The agreement explained that Owl was to pay $350,000, and the drivers reserved their right to

appeal both the motion in limine ruling that damages for the FLSA overtime claim were limited to one-and-a-half times the hourly rate they received and the partial summary judgment ruling on the breach of contract claim. The district court adopted the magistrate judge's order that approved the settlement agreement. That order made clear that the drivers "do not waive any arguments regarding whether they were paid the proper prevailing wage or whether they may recover overtime at a higher 'regular rate,'" i.e., the adverse motion in limine ruling. The district court's final order entered a $350,000 judgment in favor of the drivers on the FLSA claim but did not mention the breach of contract claim it had dismissed at summary judgment.

The drivers timely appealed.

## II.

There are three issues in this appeal: our appellate jurisdiction, the district court's summary judgment ruling on the drivers' breach of contract claim, and the district court's ruling on Owl's motion in limine. "We review de novo our own jurisdiction." *Morales v. U.S. Att'y Gen.*, 33 F.4th 1303, 1307 (11th Cir. 2022). We also review *de novo* a district court's grant of summary judgment. *See Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1219 (11th Cir. 2015). Ordinarily, "in reviewing a district court's grant of a . . . motion in limine, the standard is abuse of discretion." *United States v. Thompson*, 25 F.3d 1558, 1563 (11th Cir. 1994). But the drivers argue that the district court's granting of the motion in limine was based on

22-12974          Opinion of the Court          7

an erroneous legal conclusion, and "[c]onclusions of law are re-viewed *de novo*." *Id.*

## III.

### *A.*

We will start with our jurisdiction. "We have a threshold obligation to ensure that we have jurisdiction to hear an appeal, for '[w]ithout jurisdiction [we] cannot proceed at all in any cause.'" *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1227 (11th Cir. 2020) (quoting *Ex Parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869)). We must answer two questions to determine whether we have jurisdiction to hear this appeal. First, have the drivers appealed a final judgment under 28 U.S.C. § 1291? Second, do the drivers have standing to challenge the district court's rulings? We answer "yes" to both questions.

### 1.

We first consider whether we have jurisdiction under Section 1291, which gives us jurisdiction over "appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. We are to give Section 1291 a "practical rather than a technical construction." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (citing *Bank of Columbia v. Sweeny*, 26 U.S. (1 Pet.) 567, 569 (1828); *United States v. River Rouge Improvement Co.*, 269 U.S. 411, 414 (1926); *Cobbledick v. United States*, 309 U.S. 323, 328 (1940)). Section 1291 stands to "disallow appeal from any decision which is tentative, informal or incomplete." *Id.* Under Section 1291, "[s]o

long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal." *Id.* Thus, for an order to be "final" under Section 1291, it must "end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment." *Cunningham v. Hamilton County*, 527 U.S. 198, 204 (1999) (quotation marks omitted).

The drivers raised two claims in the district court: Count I is an overtime claim under the FLSA, and Count II is a breach of contract claim under state law. To have reached a final decision, the district court must have fully adjudicated both of those claims, leaving nothing open or unfinished as to either claim. We believe it did.

We'll turn first to Count II. Early in the case, the district court granted summary judgment on Count II in favor of the defendant. It concluded that the drivers' breach of contract claim could not succeed as a matter of law, and its order contemplated no further proceedings on the claim. Specifically, in its order granting summary judgment on the breach of contract claim, the district court concluded that Owl was "entitled to judgment in its favor as to Plaintiffs' breach of contract claim." It later adopted a magistrate judge's report and recommendation, which also acknowledged that the district court had "found as a matter of law Plaintiffs could not prevail on their [breach of contract] claim." It is safe to say that the district court's grant of summary judgment on Count II resolved that claim on the merits and left nothing else for the district court to do as to that claim.

Owl notes that, at the close of the case, the district court did not include the words "Count II" in its judgment in favor of the drivers on Count I. But we don't see how that failure makes the district court's summary judgment ruling on Count II any less "final." No authority suggests that, when a district court disposes of a claim earlier in a case, it must again mention that claim in a separate document at the end of the case for its judgment to be "final" under Section 1291. To conclude that a district court's judgment is not final because it fails to re-reject already-dismissed counts would disregard our precedent's command to give Section 1291 a "practical rather than a technical construction." *Cohen*, 337 U.S. at 546. *See also Acton v. City of Columbia*, 436 F.3d 969 (8th Cir. 2006) (concluding that the court had appellate jurisdiction under Section 1291 even though the district court did not expressly mention already-resolved claims in its final document). We thus hold that the district court fully resolved Count II.

Next, we must consider whether the district court fully resolved Count I when it entered judgment for the drivers on that claim in the amount of $350,000. Again, we cannot see how the district court's ruling on Count I left any lingering issues for it to resolve. The $350,000 judgment on Count I fully resolved that count, leaving "no further action by the district court." *Sanders v. Monsanto Co.*, 574 F.2d 198, 199 (5th Cir. 1978); *see also Pacific R.R. v. Ketchum*, 101 U.S. 289, 296 (1879) ("If, when the case gets here, it appears that the decree appealed from was assented to by the appellant, . . . we must still receive and decide the case."). And it doesn't matter for purposes of finality that the parties agreed to the

$350,000 judgment on Count I. "[F]or jurisdictional purposes there is no distinction between 'consent' and 'adversarial' judgments." *Downey v. State Farm Fire & Cas. Co.*, 266 F.3d 675, 682 (7th Cir. 2001). We have explained that, no less than an adversarial judgment, such a "consent judgment" operates as "a court's final determination of the rights and obligations of the parties in a case." *McNamara v. Gov. Employees Ins. Co.*, 30 F.4th 1055, 1062 (11th Cir. 2022) (quotation marks omitted).

Owl suggests that our precedents under Federal Rule of Civil Procedure 41 command a different result. But the district court's final order was not a dismissal. The settlement in this case was ostensibly approved by the district court under *Lynn's Food Stores*. And we have acknowledged that, in other cases, "district courts have interpreted dismissals involving *Lynn's Food Stores* as Rule 41(a)(2) dismissals." *Rosell v. VMSB, LLC*, 67 F.4th 1141, 1143 n.1 (11th Cir. 2023) (citing *Padilla v. Smith*, 53 F.4th 1303, 1308 & n.8 (11th Cir. 2022)); *see generally Lynn's Food Stores, Inc.*, 679 F.2d at 1350. But neither our precedent nor Rule 41 require every FLSA *Lynn's Food* settlement to be a Rule 41 dismissal, and no party here has made any argument as to why they should be. In *Rosell*, the parties conceded that their attempt to dismiss the last remaining count in the complaint was an attempted voluntary dismissal under Rule 41. *See* 67 F.4th at 1143 n.1. Here, however, all agree that the district court entered a judgment on the last remaining count, rather than a dismissal. Oral Arg. at 21:08–38.

In short, the district court's judgment is final under Section 1291. When the district court entered a consent judgment on the only remaining claim, there was no action left for the court or parties to take to end the litigation. All claims have been completely resolved, and the district court's judgment is final.

2.

Next, we must consider whether the drivers have standing to challenge the district court's ruling on Owl's motion in limine that limited the damages available for Count I, even though they consented to the district court's judgment on Count I. We follow the general rule that "a party has no standing to appeal an order or judgment to which he consented." *Hofmann v. De Marchena Kaluche & Asociados*, 657 F.3d 1184, 1187 (11th Cir. 2011). But there is an exception to that rule: when a party enters a consent judgment and expressly preserves the right to appeal a previously contested issue, the party retains standing to appeal. *See Dorse v. Armstrong World Indus., Inc.*, 798 F.2d 1372, 1376 (11th Cir. 1986).

We believe the exception applies here. The parties' motion for approval of their settlement and the district court's order granting that motion make clear that the drivers preserved their right to appeal the district court's ruling on Owl's motion in limine even though the parties otherwise agreed to a judgment on Count I. The motion for approval of the parties' agreement stated that it "permits plaintiffs . . . to appeal this Court's rulings on the prevailing wage and seek all of their wages at a higher federally-mandated prevailing wage rate." The drivers also expressly declined to

"waive any arguments regarding whether they were paid the proper prevailing wage or whether they may recover overtime at a higher regular rate." In approving that settlement agreement, the district court explained that the drivers' "do not waive any arguments regarding whether they were paid the proper prevailing wage or whether they may recover overtime at a higher 'regular rate,'" i.e., the adverse motion in limine ruling.

Because the settlement agreement and the district court's consent judgment recognized that the drivers still disputed the district court's ruling on the motion in limine, we conclude that the drivers have standing to challenge that ruling on appeal.

*B.*

Having assured ourselves of our jurisdiction to hear this appeal, we now turn to the merits. The drivers argue that the district court erred in the way it disposed of both of their claims. As to Count II, the drivers say that the district court should not have granted summary judgment on their state law breach of contract claim because the SCA minimum wage was incorporated into their employment contract. They argue that, even if they may not sue to enforce the SCA minimum wage as a matter of federal law, they may as a matter of state law. As to Count I, the drivers argue that the district court erred as a matter of law when it limited their damages under their FLSA overtime claim. Specifically, the drivers argue that they can seek overtime pay based on the hourly rate that they should have been paid under the SCA, not the lower rate that they actually received. We will address both arguments in turn.

1.

We will start with Count II. In Count II, the drivers argue that Owl did not pay them the minimum wage that they were due under the SCA. The SCA applies to contracts made by the federal government that exceed $2,500 and have the main purpose of furnishing services in the United States through service employees. 41 U.S.C. § 6702(a). Under the SCA, government contracts must "contain a provision specifying the minimum wage to be paid to each class of service employee engaged in the performance of the contract." *Id.* § 6703(1). The Secretary of Labor designates the Wage and Hour Division of the DOL to determine the "prevailing rate" for each class of employee in each locality. *Id.*; 29 C.F.R. § 4.1a(c). As relevant here, the Wage and Hour Division has determined that the prevailing rate is around $11 per hour for taxi drivers, $15 per hour for shuttle bus drivers, and $18 per hour for ambulance drivers.

There is, however, "no private right of action under the SCA." *Lee v. Flightsafety Servs. Corp.*, 20 F.3d 428, 431 (11th Cir. 1994). Rather, the Secretary of Labor may enforce the SCA through the DOL administrative review board. *See* 41 U.S.C. § 6707; 85 Fed. Reg. 13,186 (Mar. 6, 2020) (delegation of authority). To that end, the Wage and Hour Division of the DOL has determined that Owl's drivers should be classified as shuttle bus drivers. *See MLB Transp., Inc. & Owl, Inc. v. Adm'r, Wage & Hour Div.*, No. 2016-0078, 2020 WL 1151010 (ARB Feb. 13, 2020). So, according to the DOL,

Owl paid its drivers about $4 less an hour than required by Owl's contract with the VA.

The drivers seek to recoup the difference between what Owl paid them and what they say the SCA required by bringing a claim under Florida contract law. A Florida breach of contract claim requires the plaintiff to establish (1) a valid contract, (2) a material breach, (3) causation, and (4) damages. *Handi-Van, Inc. v. Broward Cnty.*, 116 So. 3d 530, 541 (Fla. Dist. Ct. App. 2013). Owl argues that—even if it breached a clause in its contract with the government—it did not breach any obligation under its employment contract with the drivers. Instead, it argues that it paid the drivers exactly what they agreed to be paid—an $11 hourly rate. We agree with Owl and hold that the drivers cannot enforce the SCA prevailing rate through a Florida breach of contract claim.

We faced a similar question in *District Lodge No. 166 v. TWA Services, Inc.*, 731 F.2d 711 (11th Cir. 1984). There, a union sued on behalf of its employees for backpay after the DOL issued a wage determination that classified the employees' wages as higher than they had previously been paid. *Id.* at 714. The union argued that there was a private right of action under the SCA and that, even if there were not, the employment contract incorporated the SCA wage requirements by operation of law. We disagreed on both points. We first held that there was no private right of action under the SCA. *Id.* We then rejected the incorporation argument, explaining that there was no reason to impose the SCA wage "where the contract is silent on the issue the Union attempts to enforce against

the employer." *Id.* at 716. We reasoned that the union's argument failed because the employer "followed the contract as written and was required to do no more." *Id.*

We also distinguished two decisions the union relied on— one where the employees brought an FLSA claim, another where the employees brought a Title VII claim. *Id. See generally Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728 (1981); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974). In both decisions the Supreme Court "did not incorporate in the contracts by operation of law the provisions of statutory law it invoked as plaintiffs would have us do here." *District Lodge*, 731 F.2d at 716. Instead, we interpreted those decisions to recognize employees' rights to bring suit under Title VII and the FLSA instead of incorporating those statutes into employment contracts by operation of law. *Id.*

Florida law does not command a different outcome. Florida law provides that "when parties contract upon a matter which is the subject of statutory regulation, the parties are presumed to have entered into their agreement with reference to such statute, which becomes a part of the contract, unless the contract discloses a contrary intention." *Westside EKG Assocs. v. Found. Health*, 932 So. 2d 214, 216 (Fla. Dist. Ct. App. 2005), *approved*, 944 So. 2d 188 (Fla. 2006). The drivers argue that this principle overcomes our holding in *District Lodge*. We disagree. For one, the SCA applies to contracts "made by the Federal Government," so the only contract the SCA would apply to is the contract between Owl and the VA, not the contracts between Owl and its drivers. And more importantly, the

contracts between Owl and its drivers do disclose a contrary intention. Although there was no written contract, the drivers agreed to accept the taxi driver rate, not a rate to be determined by the DOL under the SCA.

To be clear, we do not dispute that, as a matter of law, parties may incorporate federal statutes without private rights of action into their employment contracts. *See Wigod v. Wells Fargo Bank*, 673 F.3d 547, 581 (7th Cir. 2012) ("The absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law."). The problem here is not that it is impossible to incorporate a federal minimum wage law into an employment contract; the problem is that there is no reason to think that the drivers and Owl did so. In this case, the parties agreed to the taxi driver rate, and it was nearly five years later that the DOL brought an enforcement action and told Owl that it should have paid its drivers the shuttle bus driver rate instead.

The drivers argue that we should follow courts that have held that employers and employees incorporated the prevailing wage for H-2 temporary workers into their employment contract. *See Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614, 619 (8th Cir. 2015); *Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1341 (5th Cir. 1985). But these decisions are inapposite. The DOL approves the prevailing wage that an employer must pay an H-2 temporary worker before he is hired. *See Cuellar-Aguilar*, 812 F.3d at 617. And the applicable regulations require that the wage

for H-2 workers be included in the employment contract. *See* 20 C.F.R. § 655.122(a) (requiring employers to include an offered wage based on the pre-set prevailing wage determination in job offers); *Id.* § 655.18(b)(5). The SCA, however, imposes obligations on the contract between the government and employer, not the contract between the employee and employer. *See* 41 U.S.C. §§ 6702(a), 6703(1). Under the SCA, the parties may agree to any wage as a term of their employment contract—with the caveat that the DOL may later determine that the wage paid was too low to satisfy the employer's separate contract with the federal government.

Finally, it is worth noting that our holding does not leave the drivers without a remedy. The drivers previously filed a charge with the DOL alleging misclassification. The Wage and Hour Administrator then reclassified the drivers as shuttle bus drivers and ordered backpay dating back to 2015. To the extent that the drivers seek even higher hourly wages, they could have made that argument in an administrative forum as well. *See* 29 C.F.R. § 4.56(a)(1).

2.

We next turn to whether the district court erred when it granted Owl's motion in limine to cap the drivers' FLSA overtime damages at one-and-one-half times the hourly rate that Owl paid them, notwithstanding the DOL's determination that they should have been paid a higher hourly wage under the SCA. The drivers say that an employer cannot cap overtime pay by paying an unlawfully low hourly rate. They argue that damages for their FLSA

overtime claim should be based on the higher SCA prevailing rate to the extent that rate is what the law requires them to have been paid. We agree with the drivers.

The FLSA requires employers to pay overtime when a covered employee works more than 40 hours per week. 29 U.S.C. §§ 206, 207. Specifically, it requires the employer to pay a minimum overtime rate of one-and-one-half times "the regular rate" the employee is otherwise paid. *Id.* § 207(a)(1). The FLSA then defines "the 'regular rate' at which an employee is employed" to "include all remuneration for employment" paid to the employee. 29 U.S.C. § 207(e). The FLSA's plain language envisions that it will be applied along with other wage and hour legislation. *See* 29 U.S.C. § 218(a) (stating that the FLSA's minimum wage requirement does not excuse noncompliance with "any" federal law that mandates a higher wage). And, unlike the SCA, the FLSA provides employees with a private right of action to sue their employers based on unpaid overtime. *See* 29 U.S.C. § 216(b).

We agree with the drivers that the "regular rate" under the FLSA is the rate required by federal law, not the actual rate an employer paid its employees if that rate violates federal law. The FLSA does not define the term "regular rate" in a way that expressly answers this question. But the Supreme Court has recognized that the statute incorporates the idea that the "regular rate" paid must be lawful under federal law. Addressing the interplay between the FLSA's overtime and minimum wage provisions, for example, the Court explained in 1945 that "the regular rate refers to the hourly

rate actually paid the employee . . . . *[a]s long as* the minimum hourly rates established by [the FLSA] are respected." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945) (emphasis added). The Court has also recognized that the FLSA should be read in conjunction with other federal laws that set minimum wage requirements. *See Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 516–20 (1950). Indeed, in *Powell*, the Court concluded that the Walsh-Healey Act, which set prevailing minimum wages for certain employees, was "mutually supplementary" with the FLSA. *Id.* at 520.

In addition to this precedent, the DOL has long interpreted "regular rate" to be the legal rate. Since 1965, DOL regulations have explained that, even though the "regular rate" is usually the actual rate paid to the employee, *see* 29 C.F.R. § 778.108, the "regular rate" may not be lower than the minimum wage the employee is entitled to under federal, state, or local law. *Id.* § 778.5. In fact, according to the DOL, "the words 'regular rate at which he is employed' . . . must be construed to mean the regular rate at which he is lawfully employed." *Id.* The DOL also takes the position that FLSA overtime compensation "cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours . . . under any applicable statute has been paid." *Id.* § 778.315.

The DOL has applied this position to statutory minimum wages in federal statutes other than the FLSA. In the context of the Davis-Bacon Act, the DOL has determined that "in no event can

the regular . . . rate upon which premium pay for overtime is calculated under the [FLSA] be less than the amount determined by the Secretary of Labor as the basic hourly rate (i.e., cash rate) under [the DBA]." *Id.* § 5.32(a). And, directly on point here, the DOL Wage and Hour Division's Field Operations Handbook states that "where different rates are applicable under the FLSA . . . and the McNamara-O'Hara Service Contract Act (SCA), . . . the regular rate of pay under the FLSA . . . cannot be lower than the highest minimum wage rate applicable." Field Operations Handbook 32j00.

The DOL's position has been the same for 80 years, and we find it persuasive. The Supreme Court has recently reaffirmed that courts may "seek aid from the interpretations of those responsible for implementing particular statutes," and that "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning." *Loper Bright Enters. v. Raimondo*, --- U.S. ----, 144 S. Ct. 2244, 2262 (2024). For our part, we have previously recognized the DOL's Field Operations Handbook as a persuasive authority. *See Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1255 (11th Cir. 2001). We think the DOL's consistent position on the meaning of "regular rate" "constitute[s] a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see Gelber v. Akal Sec., Inc.*, 14 F.4th 1279, 1281 n.1 (11th Cir. 2021) (holding that DOL regulations interpreting hours worked under the FLSA are entitled to *Skidmore* deference).

The DOL's understanding of "regular rate" is also consistent with the views of other circuits. *See Amaya v. Power Design, Inc.*, 833 F.3d 440 (4th Cir. 2016); *Grochowski v. Phoenix Constr.*, 318 F.3d 80 (2d Cir. 2003). In *Amaya*, the Fourth Circuit read the FLSA and Davis-Bacon Act to work together so that the worker's "regular rate" is the higher rate of the rate the employee was paid or the DBA prevailing wage. 833 F.3d at 447–48. And in *Grochowski*, the Second Circuit affirmed the district court's decision that recognized a higher DBA rate would apply to an FLSA claim if the court had found the workers were entitled to DBA prevailing wages. 318 F.3d at 87.

Finally, this reading of the statute is supported by common sense. *Abramski v. United States*, 573 U.S. 169, 179 (2014) (noting that courts "must . . . interpret the relevant words [of a statutory provision] not in a vacuum, but with reference to the statutory context, structure, history, and purpose" of the law, "not to mention common sense" (quotation marks omitted)). It would be exceedingly odd, for example, if an employer could avoid paying overtime wages because it wrongfully paid nothing to its employees for their regular working hours. It would be just as odd if, as is the case here, a government agency determined that federal law required a business to have paid its employees a higher hourly wage, but the employees' overtime rate would remain set at one-and-a-half times a lower and unlawful hourly wage.

For its part, Owl says we should adopt an SCA specific rule; it says that the absence of a private right of action in the SCA means

that employees cannot use that wage in an FLSA overtime suit. We disagree. We have already recognized that the FLSA and SCA are not mutually exclusive. *See Lee*, 20 F.3d at 431. In *Lee*, an employer moved to dismiss its employees' FLSA claims against it, arguing that the employees could not maintain an FLSA claim for unpaid wages because the employees' wages were also covered by the SCA. *Id.* The district court rejected that argument, and we affirmed. *Id.* We recognized that although there is no private right of action under the SCA, "[t]he provisions of the FLSA and the SCA may all apply as long as they do not conflict" because "Congress intended that the FLSA overlap with other federal legislation." *Id.*

We can easily apply both the FLSA and the SCA in this case without a conflict. *See Miccosukee Tribe of Indians of Fla. v. U.S. Army Corps of Engineers*, 619 F.3d 1289, 1299 (11th Cir. 2010) ("The conclusion that two statutes conflict . . . is one that courts must not reach lightly."). The SCA's lack of a private right of action is of no import to the drivers' FLSA overtime claim. The drivers may bring their FLSA overtime claim because Congress decided it was appropriate to permit that statutory remedy. Just like the minimum wage provision in the FLSA itself, the SCA is relevant to an FLSA overtime claim only insofar as it helps define the "regular rate" on which the drivers' overtime damages are based. Although Congress made different choices about how the SCA and the FLSA would be enforced, those choices do not put the statutes in conflict with each other.

Finally, Owl contends that it would be administratively problematic to allow employees to rely on the SCA prevailing rate in litigation over their employer's failure to pay overtime. Again, we disagree. The law creates an administrative framework for the DOL to determine whether workers under a federal contract have been paid too little under the SCA. *See* 29 C.F.R. §§ 8.1(b)(1), (6). In a case like this one, district courts can simply wait until the end of any DOL administrative proceedings under the SCA before moving forward on an FLSA overtime claim that relies on an SCA rate. And, of course, the DOL has already concluded in this case that Owl underpaid its drivers in violation of the SCA.

## IV.

The district court is **AFFIRMED IN PART** and **REVERSED IN PART**. We **REMAND** for further proceedings consistent with this opinion.