[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12446

_____

HECTOR DIAZ-ARELLANO,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A073-741-687

_____

Before WILSON, GRANT, and LAGOA, Circuit Judges.

GRANT, Circuit Judge:

An immigration judge can cancel an otherwise lawful removal when it would cause "exceptional and extremely unusual hardship" to a qualifying relative—a spouse, parent, or child who is a U.S. citizen or lawful permanent resident.  8 U.S.C. § 1229b(b)(1).

Hector Diaz-Arellano, a native and citizen of Mexico, sought that form of relief when his daughter was twenty years old—just under the statute's age limit of twenty-one.  But by the time of his final removal hearing, her next birthday had passed.  Because he no longer had a qualifying child when his application for cancellation was adjudicated as a final matter, Diaz-Arellano was ineligible for relief.  We therefore deny his petition for review.

## I.

Diaz-Arellano entered the United States in 1989 with no entry documents or other legal authorization.  Twenty-eight years later, in August 2017, the Department of Homeland Security charged him as a removable alien.  He conceded removability at his initial hearing, but said that he planned to seek cancellation of removal under 8 U.S.C. § 1229b(b)(1) because it would cause "exceptional and extremely unusual hardship" to a child— specifically, his U.S.-citizen daughter.

At Diaz-Arellano's first scheduling hearing on February 13, 2018, the immigration judge noted that his daughter's twenty-first birthday was on September 18, less than a year away.  That was a

problem because the cancellation-of-removal statute defines "child" as "an unmarried person under twenty-one years of age." 8 U.S.C. § 1101(b)(1). The immigration judge alerted Diaz-Arellano that his daughter's aging out would imperil any ability to cancel his removal; she had also offered to schedule an individual hearing on his yet-to-be-filed application. Diaz-Arellano, for whatever reason, declined.

Instead, he waited two more months, finally applying for cancellation of removal on April 25, 2018. Once he filed, the same immigration judge proposed a final removal hearing date of June 6, 2019—a little over a year away. When asked whether that presented any problems, neither Diaz-Arellano nor his counsel raised any concerns—even though the date fell roughly eight months after his daughter's twenty-first birthday.

A full year came and went. Just a few weeks before the removal hearing, Diaz-Arellano moved for a continuance so that he could file for an adjustment of status to "lawfully admitted for permanent residence." *See* 8 U.S.C. § 1255(a). The reason? His relationship to his U.S.-citizen daughter, who was now an adult. At the June 6 hearing, the immigration judge (a different official this time) denied the continuance, explaining to Diaz-Arellano that he was not eligible for adjustment of status because he could not show that he had been lawfully admitted or paroled into the United States. *See id.*; 8 C.F.R. § 1245.1(b)(3). Because Diaz-Arellano conceded (as he had to, given the nature of his request for adjustment of status) that his daughter no longer qualified as a

child, the immigration judge denied his application for cancellation of removal and ordered him removed to Mexico.

The Board of Immigration Appeals affirmed. Citing longstanding agency precedent, the Board reaffirmed its rule that a child who was under twenty-one when her parent applied for cancellation of removal, but has aged out by the time the application is adjudicated, does not qualify as a child under the cancellation-of-removal statute. *See Matter of Isidro-Zamorano*, 25 I. & N. Dec. 829, 830–31 (B.I.A. 2012). The Board also found no "undue or unfair delay" in Diaz-Arellano's removal proceedings that would justify a departure from that usual rule. Diaz-Arellano now petitions this Court for review of the Board's decision.[1]

## II.

We review only the decision of the Board of Immigration Appeals, unless the Board has expressly adopted the immigration judge's decision. *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016). We review the Board's interpretation of a statute de novo. *Poveda v. U.S. Att'y Gen.*, 692 F.3d 1168, 1172 (11th Cir. 2012).

## III.

An immigration judge has discretion to cancel removal for an alien if (assuming other requirements are met) that "removal

---

[1] Both before the Board and in his brief to this Court, Diaz-Arellano also argued that the denial of his motion for a continuance of his removal hearing was an abuse of discretion. At oral argument, however, Diaz-Arellano's counsel affirmatively abandoned this argument.

would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child" who is a U.S. citizen or a lawful permanent resident.[2]  8 U.S.C. § 1229b(b)(1)(D).  The term "child" is defined as "an unmarried person under twenty-one years of age." *Id.* § 1101(b)(1).  The question here is when the child's age is determined.

This case was litigated in the shadow of *Matter of Isidro-Zamorano*, in which the Board of Immigration Appeals held that a child who turns twenty-one before the adjudication of her parent's application for cancellation of removal is no longer a qualifying relative under the statute.  25 I & N Dec. at 831.  Diaz-Arellano argues that the Board erred in *Matter of Isidro-Zamorano*, and that he is eligible for cancellation of removal because he filed his application before his daughter turned twenty-one.  For its part, the government first said that the Board's interpretation was entitled to *Chevron* deference because it was a reasonable interpretation of an ambiguous statute.  But later, at oral argument, it added that the plain text of the statute commands the same outcome.

---

[2] The entire text of the relevant provision reads as follows: "The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien . . . establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."  8 U.S.C. § 1229b(b)(1)(D).

After both briefing and oral argument concluded, the Supreme Court formally overruled the *Chevron* deference regime. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024). With *Chevron* out of the picture, we exercise our "independent judgment" in considering whether the Board of Immigration Appeals acted within its statutory authority when it affirmed that Diaz-Arellano's daughter was not a qualifying child for purposes of cancellation of removal. *Id.* at 2273. And we exercise that interpretive authority whether or not the governing statute is ambiguous on the matter. *Id.*

Here, though, the demise of *Chevron* makes no difference—the text of 8 U.S.C. § 1229b(b)(1)(D) unambiguously requires that an alien have a qualifying relative when the immigration court finalizes its decision on the application for cancellation of removal. If an applicant is proceeding based on exceptional hardship to a child, this means that there must be a child—an unmarried person under the age of twenty-one—when the final decision on cancellation of removal is made. It is not enough that there was once a child who would have suffered hardship when the alien first applied for relief.

The statute, after all, directs immigration judges to examine the effect of the applicant's "removal." And the effect of that removal on the listed relatives depends on the state of the world at the time of that removal—not at some earlier date. So if an alien only has adult children once his removal occurs, that removal does not cause exceptional hardship to any qualifying child. This point

22-12446               Opinion of the Court                    7

extends to other qualifying relatives as well.  An alien's removal would not cause hardship to her parent if the parent is deceased at the time she is removed.  Nor would the alien's removal cause hardship to a spouse if the couple has divorced during the pendency of immigration proceedings.  The statute deals with facts on the ground at the time of removal—it does not require immigration judges to pretend hardships still exist that plainly do not by the time the application is adjudicated.[3]

We note that this present-tense determination will cut both ways.  Babies will be born; couples will marry.  And immigration judges may—in fact, must—consider hardship to these newly qualifying relatives.  So although children can age out when removal proceedings take months or years to schedule, those delays can work in an applicant's favor too.  The statute offers no reason to conclude that Congress prioritized relief for aliens whose removal would have caused exceptional hardship in the past over those whose removal would cause exceptional hardship to a

---

[3] The dissenting opinion asserts that this opinion "identifies the immigration court as the grammatical subject of the statute." Dissenting Op. at 2.  It does not.  The grammatical subject of this provision does not matter, though; what is important in § 1229b(b)(1)(D) is the grammatical *object*—the child—because the statute aims to protect children from the harsh effects of removal.  It does not matter whether an immigration court examines those effects or an applicant establishes them.  Either way, the question is whether "removal would result in" extreme hardship to the alien's "child." 8 U.S.C. § 1229b(b)(1)(D).  And that question can only be answered at the time of removal.

8                    Opinion of the Court                    22-12446

qualifying relative *now*.[4]

In fact, Congress has been explicit when it has intended to adopt a policy freezing a child's age for purposes of applying an immigration provision. The Child Status Protection Act of 2002 "provides age-out protection for derivative child beneficiaries adversely affected by administrative delays in the adjudication of immigrant petitions." *Tovar v. U.S. Att'y Gen.*, 646 F.3d 1300, 1304 (11th Cir. 2011); *see* Pub. L. No. 107-208, 116 Stat. 927. For a child who seeks to immigrate as an immediate relative of a U.S. citizen, for example, the child's age is fixed at the time of filing her initial petition. *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 51 (2014) (plurality opinion); 8 U.S.C. § 1151(f)(1). The Act explicitly amends a number of immigration provisions, but the cancellation-of-removal statute is not one of them.

All that to say, this issue has not escaped the attention of Congress. If it wants to extend the availability of cancellation of removal to aliens whose children have aged out while their applications for relief are pending, it knows how to do so. But unless and until it does, we apply the statute on the books. Because Diaz-Arellano no longer has a child under the age of twenty-one, he is ineligible for relief.[5]

---

[4] We note that the applicant is really only a subsidiary beneficiary of the statute's protections, which are designed to safeguard the child, spouse, or parent.

[5] The only other circuits to have addressed this issue in published opinions agree that an alien's child must be under the age of twenty-one as of the final adjudication of the alien's application for cancellation of removal, though both

## IV.

Diaz-Arellano argues that even if his daughter has aged out, he should have the benefit of an implied exception to the Board's *Matter of Isidro-Zamorano* decision because he suffered "undue or unfair delay" in his removal proceedings.  His argument that *Matter of Isidro-Zamorano* recognized such an exception is weak at best— the Board did not say that a finding of unfair delay would have changed the outcome.  *See* 25 I. & N. Dec. at 832.  And Diaz-Arellano cites no authority at all for this exception in the statute's text.  We have no need to consider this point further because even if such an exception did exist, he would not qualify for it.

Diaz-Arellano applied for cancellation only five months before his daughter's twenty-first birthday.  And though the immigration judge herself raised the issue at the first scheduling hearing, Diaz-Arellano declined when she offered him an earlier hearing schedule.  He then failed to object at the next hearing when the immigration judge proposed a final hearing date well after his daughter's twenty-first birthday.

Whatever delays occurred were the product of Diaz-Arellano's own decisions.  The short period between his application and his daughter's birthday, combined with his repeated failure to

---

relied on *Chevron*.  *See Mendez-Garcia v. Lynch*, 840 F.3d 655, 663–64 (9th Cir. 2016); *Rangel-Fuentes v. Garland*, 99 F.4th 1191, 1194–97 (10th Cir.), *vacated and panel reh'g granted*, No. 23-9511, 2024 WL 3405079 (10th Cir. July 10, 2024) (reconsidering in light of *Loper Bright*).

10                   Opinion of the Court                   22-12446

take steps that would expedite proceedings, leaves no serious argument for equitable relief because of "undue" or "unfair" delay.

★    ★    ★

Immigration law can often seem—and indeed, sometimes is—harsh. But relief for parents whose removal would cause their U.S.-citizen children extreme hardship is one mercy. Here, no child would suffer such hardship, so relief is not available. The petition for review is **DENIED**.

WILSON, Circuit Judge, dissenting:

The issue here is one of statutory interpretation. Because "[t]he starting point for all statutory interpretation is the language of the statute itself," *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999), like the majority, I begin with the plain text of the relevant law.

Title 8 of the U.S. Code covers "Aliens and Nationality." Section 1229b specifies the requirements a noncitizen must meet to qualify for cancellation of removal. One of these statutory requirements is that the noncitizen must "establish[] that removal would result in exceptional and extremely unusual hardship to [their] spouse, parent, or child" who is a United States Citizen or lawful permanent resident. 8 U.S.C § 1229b(b)(1)(D). For immigration purposes, a "child" is "an unmarried person under twenty-one years of age." 8 U.S.C. § 1101(b)(1).

As you can see, the statute is silent as to whether an immigration court should consider the noncitizen's qualifying relative's age at the time the application for cancellation of removal is *filed* versus at the time the application is *adjudicated*. I dissent from the majority's characterization of § 1229b(b)(1)(D) to "unambiguously require[] that a[] [noncitizen] have a qualifying relative when the immigration court finalizes its decision on the application." Maj. Op. at 6. Because the statute is silent on the timing of the qualifying relative's age, it is necessarily ambiguous as to this issue.

To support its finding of unambiguity, the majority reasons that the statute "directs immigration judges to examine the effect

2                    WILSON, J., Dissenting                    22-12446

of the applicant's 'removal.'" Maj. Op. at 6. This interpretation identifies the immigration court as the grammatical subject of the statute. But the plain text of the provision—which provides that the immigration court[1] "may cancel [a noncitizen's] removal" if the noncitizen "establishes that removal would result in exceptional and extremely unusual hardship" to their qualifying relative—can also be read such that the noncitizen applicant, rather than the immigration court, is the grammatical subject. 8 U.S.C. § 1229b(b)(1)(D). This interpretation focuses on what the applicant establishes when submitting their application rather than what the court considers when reviewing the application. Thus, the plain text of the statute gives rise to two plausible, conflicting interpretations.

When statutory language leaves questions unanswered, as it does here, we are directed to interpret the provision "not in a vacuum, but with reference to the statutory context, structure, history, and purpose" of the law, "not to mention common sense." *Abramski v. United States*, 573 U.S. 169, 179 (2014) (internal quotation omitted); *see also Perez v. Owl, Inc.*, 110 F.4th 1296, 1308 (11th Cir. 2024).

Those familiar with immigration proceedings understand they are a lengthy endeavor. Many petitioners wait more than a year for the immigration court to grant or deny their application for cancellation of removal, as did Hector Diaz-Arellano. And as

---

[1] At the direction of the Attorney General.

22-12446                WILSON, J., Dissenting                3

many petitioners are, Diaz-Arellano was powerless to control the date of the final hearing at which the court would finalize his application. He could only control when he submitted his application, and when he did, his daughter met the statutory requirements.[2] To consider a petitioner's child's age on an undetermined date more than likely one or more years in the future effectively lowers the statutory age cut-off from "twenty-one" to "approximately nineteen-and-a-half or twenty."

Thus, my practical interpretation of the statute parts from the majority's technical construction. When a noncitizen applying for cancellation of removal reads § 1229b(b)(1)(D), they likely—and

---

[2] The timeline of events is important here. Diaz-Arellano was served with a notice to appear on **August 20, 2017**. On **February 13, 2018**, at a master hearing before the immigration court, Diaz-Arellano indicated that he would be pursuing cancellation of removal based on his 20-year-old U.S. citizen daughter, but that he was not yet ready to file his application, needing additional time to gather documentation. The immigration judge took note of his daughter's date of birth, explaining that her turning 21 was "going to make an issue for cancellation of removal eligibility." Diaz-Arellano filed for cancellation of removal on **April 26, 2018**, five months before his daughter's twenty-first birthday on **September 19, 2018**. He then appeared for another master hearing on **May 15, 2018**, where he proceeded to schedule his individual hearing (the final hearing in an immigration case). The immigration judge shared that the earliest availability was in **June 2019**, ten months after Diaz-Arellano's daughter would turn 21. The majority notes that Diaz-Arellano declined an earlier hearing, which is true, but likely inconsequential. In May 2018, the earliest individual hearing date was June 2019—over one year away. It follows that if Diaz-Arellano had been prepared to file his application and schedule his hearing in February 2018, the earliest availability would be around March 2019—six months after his daughter's twenty-first birthday.

4                    WILSON, J., Dissenting                    22-12446

justifiably—think they have until their child's twenty-first birthday to submit their application. It is harmful to applicants, and contrary to principles of common sense, to deny an application that met statutory requirements at the time it was submitted. Accordingly, I read the statute to mean that the noncitizen applicant's child must be under twenty-one at the only date within the applicant's control: when the application for cancellation of removal is filed. Pursuant to this interpretation, I would grant Diaz-Arellano's petition and remand to the agency for further proceedings.