*Jiang v. Garland*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2021

No. 19-1911

NAIZHU JIANG,
*Petitioner*,

v.

MERRICK B. GARLAND,
UNITED STATES ATTORNEY GENERAL,
*Respondent*.[*]

On Appeal from the Board of Immigration Appeals

SUBMITTED: NOVEMBER 8, 2021
DECIDED: NOVEMBER 24, 2021

---

[*] The Clerk of Court is directed to amend the caption as above. *See* Fed. R. App. P. 43(c)(2).

Before: Leval, Cabranes, and Chin, *Circuit Judges*.

———————

Petitioner Naizhu Jiang petitions for review of a May 30, 2019 decision of the Board of Immigration Appeals denying his motion to reopen proceedings. Recent Supreme Court jurisprudence has established that Notices to Appear issued under 8 U.S.C. § 1229(a)(1) that fail to provide time-and-place information for removal proceedings in a single document do not satisfy the statutory requirements in 8 U.S.C. § 1229(a)(1), and thus do not cut off the alien's time of continuous presence in the United States needed for discretionary relief from removal. *See Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021); *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). The question presented in this case is whether an Order to Show Cause, an older version of a charging document issued pursuant to 8 U.S.C. § 1252b(a)(1) (1994) prior to the enactment of 8 U.S.C. § 1229(a)(1), need also provide that information in a single document in order to cut off the alien's continuous presence in the United States. We answer "no," and accordingly **DENY** Jiang's petition for review.

———————

Meer M. M. Rahman, New York, NY, *for Petitioner*.

Joseph H. Hunt, Assistant Attorney General; Leslie McKay & Margot L. Carter, Senior Litigation Counsel, Office of Immigration Litigation, United States Department of Justice, Washington, DC, *for Respondent*.

———————

PER CURIAM:

Congress has long afforded the Executive Branch discretion to allow otherwise removable aliens to remain in the United States. To be eligible for certain forms of this discretionary relief from removal, an alien must show that he or she has maintained a "continuous physical presence" in the United States for a specified number of years (the "residency" requirement). In 1996, Congress passed a statute — the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104–208, 110 Stat. 3009-546 — which, among other things, stopped an alien's residency clock once the alien received a charging document that thereby commences the alien's removal proceedings; in other words, any time the alien would spend in the United States after receiving the charging document would not be credited towards the residency requirement. Congress made this so-called stop-time rule applicable not only to the new charging documents to be issued under the IIRIRA — which are designated by

3

the statute as "Notice[s] to Appear" ("NTAs") — but also retroactively applied the stop-time rule to older charging documents issued under the previous statute, which were designated as Orders to Show Cause ("OTSCs"). Recent Supreme Court cases have held that, in order to trigger the stop-time rule, the time and place of the alien's removal hearing must be included in a single NTA. *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021); *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). The question presented in this case is whether the same requirement applies to the older OTSCs issued to aliens prior to the IIRIRA. We hold that it does not.

## I.

Petitioner Naizhu Jiang is a native and citizen of China. He entered the United States on September 19, 1994, without inspection, and was served the next day with an OTSC alleging that he was subject to deportation pursuant to Section 241(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(B) (1994). In the section of the

OTSC — issued by the Immigration and Naturalization Service — ordering him to appear before an immigration judge ("IJ"), instead of specifying a time and place, the OTSC stated that the hearing was "[t]o be calendared and notice [would be] provided by the office of the [IJ]" by subsequent mailing. Certified Administrative Record at 166. That subsequent notice was mailed to Jiang on February 15, 1995, informing him that a hearing before the immigration court had been scheduled on March 22, 1995.

After a series of further notices rescheduling the hearing, as well as Jiang's successful motion to transfer venue from Buffalo to the New York City immigration court, Jiang attended his first hearing before an IJ on August 31, 1995. Through counsel, he submitted an application for asylum and withholding of deportation, or — in the alternative — requested voluntary departure. At a hearing held on April 8, 1996, a different IJ did not find Jiang's testimony to be credible and denied his application for asylum and for withholding of deportation; she did,

however, grant Jiang's request for voluntary departure. Jiang appealed to the Board of Immigration Appeals ("BIA"), which summarily dismissed his appeal. *In re Naizhu Jiang*, No. A 073 200 066 (B.I.A. Jan. 16, 1997).

Jiang, however, declined to leave the United States, and has remained here since then. In the intervening years, he has fathered two children, both of whom are American citizens, and he has had no criminal record or criminal proceedings initiated against him. And on September 17, 2018 — more than twenty years after the BIA summarily dismissed his original appeal — he moved before the BIA to reopen his case. Since his first appeal was dismissed by the BIA two decades ago, a number of important changes took place to the immigration laws.

First, Congress passed the IIRIRA,[1] which "established several new terms of art in immigration law." *Rojas-Reyes v. I.N.S.*, 235 F.3d 115, 120 (2d Cir. 2000). For example, the IIRIRA created a new type of charging document to be served on aliens — the NTA — which replaced the older OTSC. *Compare* 8 U.S.C. § 1252b(a)(1) (1994) (describing the OTSC) *with* 8 U.S.C. § 1229(a)(1) (describing the NTA). The law also replaced an older type of discretionary relief, "suspension of deportation," with a new form of relief, "cancellation of removal." To qualify for cancellation of removal under the IIRIRA, aliens were required to satisfy stricter eligibility requirements, including a longer period of residence in the United States: ten years of continuous physical presence in the country in most cases for cancellation-of-removal eligibility, as opposed to seven years for the older "suspension of deportation." *Compare* 8 U.S.C. § 1254(a)(1) (1994)

---

[1] The IIRIRA, though signed into law on September 30, 1996, went into effect on April 1, 1997, *i.e.*, after Jiang's initial appeal was decided by the BIA.

(describing suspension-of-deportation eligibility) *with* 8 U.S.C. § 1229b(b)(1) (describing cancellation-of-removal eligibility).

Apart from increasing the amount of time an alien had to be physically present in the United States in order to be eligible for discretionary relief, the IIRIRA also created a new method for calculating that time. The IIRIRA introduced the stop-time rule, a provision that "terminates an alien's accrual of time-in-residence upon the service of the charging document that initiates removal proceedings." *Rojas-Reyes*, 235 F.3d at 120; *see* 8 U.S.C. § 1229b(d)(1) ("[A]ny period of continuous residence or continuous physical presence in the United States shall be deemed to end . . . when the alien is served a notice to appear under section 1229(a)."). And while the IIRIRA generally applies only to proceedings initiated on or after the statute's effective date of April 1, 1997, *see* IIRIRA § 309(c)(1), 110 Stat. at 3009-625 (codified at 8 U.S.C. § 1101 note), Congress also retroactively applied the IIRIRA's stop-time rule upon service of

8

OTSCs issued before its enactment, IIRIRA § 309(c)(5), 110 Stat. 3009-627 (1996), *amended by* the Nicaraguan Adjustment and Central American Relief Act of 1997 ("NACARA"), Pub. L. No. 105-100, Title II, 111 Stat. 2160, 2193-2201 (Nov. 19, 1997), *further amended by* Pub. L. No. 105-139, 111 Stat. 2644 (Dec. 2, 1997).[2]

Next, in 2018, the Supreme Court held that an NTA failing to designate the specific time or place of an alien's removal proceedings was insufficient to fulfill the IIRIRA's statutory requirements and was therefore ineligible to trigger the stop-time rule. *Pereira*, 138 S. Ct. at 2114. In *Pereira*, the petitioner received a putative NTA that did not

---

[2] The IIRIRA originally contained transitional rules providing that the stop-time rule would apply to NTAs "issued before, on, or after" the date of the IIRIRA's enactment. IIRIRA § 309(c)(5), 110 Stat. at 3009-627. This language caused understandable confusion since no NTAs could have been issued before the IIRIRA's enactment as the statute itself created this novel charging document. *See Rojas Reyes*, 235 F.3d at 120. Recognizing this confusion, Congress subsequently passed the NACARA, which — among other things — replaced the words "notices to appear" with "orders to show cause" in the relevant IIRIRA transitional rule.

specify the date and time of his removal hearing. Construing Section 1229(a)(1)'s instruction that an NTA should "specif[y]" — among other things — "[t]he time and place at which the proceedings will be held," 8 U.S.C. § 1229(a)(1)(G)(i), the Court found that the putative NTA issued to the petitioner did not meet the statutory requirements of Section 1229(a)(1)(G)(i) and could not, therefore, trigger Section 1229b(d)(1)'s stop-time rule, which only applies "when the alien is served a notice to appear under section 1229(a)." 138 S. Ct. at 2114.

In September 2018, shortly after that case was decided, and relying on its holding, Jiang moved the BIA to reopen his case. He pointed to the fact that the original OTSC he received on September 20, 1994, did not specify the time or place of his deportation proceedings and argued on the basis of *Pereira* that the stop-time rule had not been triggered in his case. Consequently, he argued, he had been continuously present in the United States for more than ten years

and was thus eligible for relief under the IIRIRA's cancellation-of-removal provisions, 8 U.S.C. § 1229b(b)(1).

The BIA denied Jiang's motion. First, it noted that motions to reopen must generally be filed "within 90 days of the date of entry of a final administrative order of removal," 8 U.S.C. § 1229a(c)(7)(C)(i); *see also* 8 C.F.R. § 1003.2(c)(2), and that Jiang's motion was therefore untimely.[3] Next, the BIA found that — even if it were to equitably toll the 90-day deadline — the fact that Jiang had been issued a subsequent notice on February 15, 1995, containing the time and location for his initial hearing meant that his continuous physical presence ended on that day pursuant to the stop-time rule. *In re Naizhu Jiang,* No. A 073 200 066 (B.I.A. May 30, 2019) (citing *In re Mendoza-Hernandez & Capula-Cortes*, 27 I. & N. Dec. 520, 529 (B.I.A. 2019)). Jiang timely filed before this Court a petition for review of the BIA's decision.

---

[3] Jiang's removal order became final on January 16, 1997, when the BIA summarily dismissed his appeal of the IJ's order. His motion to reopen was filed on September 17, 2018.

11

While this matter was pending before this Court and after the parties submitted their briefs, the Supreme Court decided another case concerning NTAs that fail to include the statutorily required time and place of hearing. In *Niz-Chavez v. Garland*, the petitioner there received a putative NTA containing the charges against him, but which did not specify the time or place of his hearing. 141 S. Ct. at 1479. Two months later, the Government sent the petitioner a second document containing the time and place of his hearing. *Id.* The Government conceded that, under *Pereira*, the first document was insufficient to trigger the stop-time rule, but argued that upon receipt of the second document, all the information statutorily required under Section 1229(a)(1) had been provided and that the stop-time rule should have triggered. *Id.* The Supreme Court rejected the Government's position, and instead clarified that Section 1229(a)(1) — which describes the information required in "*a* 'notice to appear'" (emphasis added) — demands that the information be provided in a *single* NTA. *Id.* at 1480.

We now consider in this appeal whether the holdings in *Pereira* and *Niz-Chavez* concerning the requirement that time and place of hearing be specified in a single NTA in order to successfully trigger the stop-time rule applies also to OTSCs issued prior to the IIRIRA. We conclude that they do not.

## II.

When considering a petition for review of an order denying a statutory motion to reopen, we review the BIA's conclusions of law *de novo*. *Luna v. Holder*, 637 F.3d 85, 102 (2d Cir. 2011). "When the BIA has applied the correct law, its decision to deny a motion to reopen deportation proceedings is reviewed to determine whether the decision was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." *Iavorski v. U.S. I.N.S.*, 232 F.3d 124, 128 (2d Cir. 2000) (internal quotation marks omitted).

## III.

Admittedly, the situation in *Niz-Chavez* appears to be remarkably similar to the one presented here: Jiang too received a charging document that omitted the time and place of his relevant proceedings. He too then received subsequent notice of the time and place by separate document, and now similarly protests the BIA's conclusion that the stop-time rule was triggered on February 15, 1995 — the date on which he received the second notice.

Jiang's situation differs, however, from *Niz-Chavez* in one crucial respect: Jiang was charged with a pre-IIRIRA document, an OTSC, while the relevant charging document in *Niz-Chavez* was a post-IIRIRA NTA. This difference is dispositive.

*Niz-Chavez*, along with *Pereira* before it, were cases of statutory interpretation; they interpreted and applied the requirements imposed on NTAs by the IIRIRA. On the basis of Section 1229(a)(1), the Supreme Court held first that an NTA sufficient to trigger the stop-time rule must "specif[y] ... [t]he time and place at which the

14

proceedings will be held," *Pereira*, 138 S. Ct. at 2114 (quoting 8 U.S.C. § 1229(a)(1)(G)(i)) (second alteration in original), and next that all the information specified by the statute must be contained in "a" single NTA document, *Niz-Chavez*, 141 S. Ct. at 1480 (quoting 8 U.S.C. § 1229(a)(1)). The problem for Jiang is that his charging document — an OTSC — is a creature not of Section 1229(a)(1), but rather, of a completely separate statutory provision: the since-repealed Section 1252b(a)(1). In other words, *Niz-Chavez* and *Pereira* are not controlling in his case.

Moreover, the statutory provisions describing what information pre-IIRIRA OTSCs (as opposed to NTAs) must include further belie Jiang's argument that the OTSC he received was insufficient to trigger the stop-time rule. Unlike the IIRIRA's NTA provisions, the older OTSC statutory provisions do not list the time and place of the proceedings as required information to be included in the OTSC. *See* 8 U.S.C. § 1252b(a)(1) (1994) (listing the information to be included in

an OTSC); *see also Niz-Chavez*, 141 S. Ct. at 1482 n.2 ("[E]ach case-initiating document must contain the catalogue of information Congress has said the . . . respondent is entitled to receive in that document."). To the contrary, the OTSC statute explicitly stated that in a "deportation proceeding[]" like that to which Jiang was subject when he first entered the United States, "written notice . . . of . . . the time and place at which the proceedings will be held" "shall be given . . . in the order to show cause *or otherwise*." 8 U.S.C. § 1252b(a)(2) (1994) (emphasis added). In other words, the OTSC statute explicitly acknowledged the permissibility of giving an alien in deportation proceedings notice of the time and place of the hearing by separate document.

The Supreme Court had acknowledged as much when it noted in *Pereira* that NTAs and OTSCs are "entirely different document[s]," and that unlike NTAs, "orders to show cause did not necessarily include time-and-place information." 138 S. Ct. at 2117 n.9. And in

16

holding that *Niz-Chavez* and *Pereira* do not render OTSCs insufficient to trigger the stop-time rule if they omit the date or place of the hearing, today we join a number of other courts that have reached the same conclusion. *See Gonzalez-Rodriguez v. Wilkinson*, 838 F. App'x 312, 314 (9th Cir. 2021) (memorandum opinion); *Perez-Perez v. Wilkinson*, 988 F.3d 371, 375 (7th Cir. 2021); *Carrias-Mayorga v. Barr*, 787 F. App'x 955, 956 (9th Cir. 2019) (memorandum opinion); *Bilek v. U.S. Att'y Gen.*, 793 F. App'x 929, 933 n.1 (11th Cir. 2019) (per curiam).

## IV.

We note that in denying Jiang's motion to reopen, the BIA erroneously concluded that "'where a notice to appear does not specify the time or place of an alien's initial removal hearing, the subsequent service of a notice of hearing containing that information perfects the deficient notice to appear,'" thus "'trigger[ing] the stop-time rule'" and making him "[in]eligible for cancellation of removal." *In re Jiang*, No. A 073 200 066 (B.I.A. May 30, 2109) (quoting *Mendoza-*

*Hernandez*, 27 I. & N. Dec. at 529 (internal quotation marks omitted)). The BIA's reasoning is flawed. First, as a threshold matter, the BIA failed to distinguish between the type of charging document issued to Jiang in this case — a pre-IIRIRA OTSC — and the post-IIRIRA NTAs which were at the center of *Pereira* and *Mendoza-Hernandez*. Additionally, the Supreme Court has since expressly rejected the BIA's position as to the ability of a subsequent notice furnishing the time and place of hearing to cure an otherwise defective NTA such that the stop-time rule would be triggered, making clear, instead, that Section 1229(a)(1) does not permit this type of piecemeal "notice-by-installment." *See Niz-Chavez*, 141 S. Ct. at 1479-80.

Still, while the BIA's reasoning was flawed, we agree with its ultimate conclusion: that Jiang's motion to reopen was untimely and that, in any event, he is ineligible for cancellation-of-removal relief. Thus, notwithstanding the errors in the BIA's reasoning, we conclude that remand would be futile and decline to prolong this litigation any

further.  *See Manzur v. U.S. Dep't of Homeland Sec.*, 494 F.3d 281, 289 (2d Cir. 2007) ("This Court will decline a remand as futile if we can confidently predict that the agency would reach the same decision absent the errors that were made." (internal quotation marks omitted)).

## V.

In sum, we hold that unlike an NTA issued under the IIRIRA, a pre-IIRIRA OTSC need not have included time-and-place information to trigger the stop-time rule under 8 U.S.C. § 1229b(d)(1)(A), *see supra*, Op. at 8.

We have considered all of Jiang's remaining arguments and find them to be without merit.  Accordingly, Jiang's petition for review of the BIA's May 30, 2019 decision is hereby **DENIED**.  All pending motions and applications are also **DENIED**, and all stays are **VACATED**.