Yupangui-Yunga v. Bondi

## In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2024
No. 23-6522

JULIO CESAR YUPANGUI-YUNGA,
*Petitioner*,

*v.*

PAMELA BONDI,
UNITED STATES ATTORNEY GENERAL,
*Respondent*.

On Petition for Review of an Order of
the Board of Immigration Appeals.

SUBMITTED: JANUARY 30, 2025
DECIDED: OCTOBER 24, 2025

Before: JACOBS, CARNEY, and NARDINI, *Circuit Judges*.

Petitioner Julio Cesar Yupangui-Yunga ("Yupangui"), a citizen of Ecuador unlawfully present in the United States, seeks review of a decision of the Board of Immigration Appeals ("BIA") denying his

motion to reopen his removal proceedings. Yupangui applied for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(D) on the ground that his removal would result in "exceptional and extremely unusual hardship" to his three United States-citizen children. An immigration judge denied Yupangui's application and ordered him removed, and the BIA affirmed. A few months later, Yupangui moved to reopen his removal proceedings, submitting a psychological evaluation of his eldest daughter, who was then almost 20 years old, as new evidence that his removal would cause her exceptional and extremely unusual hardship. Almost two years later, the BIA denied Yupangui's motion, finding that his newly proffered evidence would not alter the outcome of his cancellation-of-removal application because his daughter was now 21 years old and had therefore "aged out" of qualifying-relative status while his motion was pending. Yupangui now challenges the BIA's decision. According to Yupangui, given what he describes as the agency's "undue delay" in processing his application for cancellation of removal, and ambiguity in the cancellation-of-removal statute, what matters is his daughter's age at the time he filed his application for relief; or perhaps at the time of his hearing before the IJ; or perhaps at the time he presented the new evidence of hardship; but certainly not at the time of the agency's decision. We disagree. We hold that § 1229b(b)(1)(D) requires a qualifying "child" to be under the age of 21 at the time an application for cancellation of removal is adjudicated. Accordingly, Yupangui's petition is DENIED.

---

Edward J. Cuccia, Esq., Law Offices of Edward J. Cuccia, P.C., New York, NY, *for Petitioner*.

2

Joseph D. Hardy, Trial Attorney, Office of Immigration Litigation, Brian M. Boynton, Principal Deputy Assistant Attorney General, Anthony C. Payne, Assistant Director, Civil Division, U.S. Department of Justice, Washington, DC, *for Respondent*.

WILLIAM J. NARDINI, *Circuit Judge*:

Petitioner Julio Cesar Yupangui-Yunga ("Yupangui"), a citizen of Ecuador unlawfully present in the United States, petitions for review of a decision by the Board of Immigration Appeals ("BIA") denying his motion to reopen his removal proceedings. In his initial proceedings, Yupangui applied for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(D) on the ground that his deportation would result in "exceptional and extremely unusual hardship" to his three United States-citizen children. An immigration judge ("IJ") denied Yupangui's application and ordered him removed to Ecuador, and the BIA affirmed.

A few months later, Yupangui moved to reopen his removal proceedings. He submitted a psychological evaluation of his eldest daughter, who was then almost 20 years old, as new evidence that his removal would cause her to suffer the requisite hardship. Almost two years later, the BIA denied the motion, concluding that his newly proffered evidence would not alter the outcome of his removal proceedings. As pertinent here, the BIA determined that his daughter

3

had "aged out" of her status as a qualifying relative because she had turned 21 while his motion to reopen was pending.

Yupangui now challenges the BIA's decision. According to Yupangui, given what he describes as the agency's "undue delay" in processing his application for cancellation of removal, and ambiguity in the cancellation-of-removal statute, what matters is his daughter's age at the time he filed his application for relief; or perhaps at the time of his hearing before the IJ; or perhaps at the time he presented the new evidence of hardship; but certainly not at the time of the agency's decision. The government disagrees, and further argues that Yupangui is precluded from raising this argument before this Court because he failed to raise it before the BIA.

As a threshold matter, we hold that the exhaustion doctrine does not bar Yupangui from contesting the BIA's ruling that his daughter "aged out" of her qualified-relative status. At the time Yupangui filed his motion to reopen, his daughter was still 19 years old. The aging-out question was raised for the first time by the BIA, when it issued its decision nearly two years later. Yupangui cannot be faulted for failing to preemptively raise it, or for failing to challenge it on a motion for reconsideration before the BIA.

But on the merits, we agree with the BIA. We hold that § 1229b(b)(1)(D) requires a qualifying "child" to be under the age of 21 at the time an application for cancellation of removal is adjudicated. Accordingly, Yupangui's petition for review is DENIED.

4

## I.    Background

Yupangui illegally entered the United States in December 1997, and since then he has continuously resided in this country.  On July 12, 2010, Yupangui was convicted in Westchester County, New York, for his third offense of operating a motor vehicle while under the influence of alcohol or drugs.[1]  A month later, the Department of Homeland Security ("DHS") served Yupangui with a notice to appear, charging that he was subject to removal under 8 U.S.C. § 1182(a)(6)(A)(i) as "[a]n alien present in the United States without being admitted or paroled."   Certified Admin. R. ("CAR") at 859.  Yupangui was subsequently ordered to appear before an IJ in New York City.

At his initial removal hearing on May 10, 2013, Yupangui— who had retained counsel—admitted all of the facts needed to make him removable.  That is, he conceded that he is not a citizen or national of the United States; that he is a native and citizen of Ecuador; that he unlawfully entered the United States on or around December 25, 1997, through Nogales, Arizona; and that he was never admitted or paroled into the United States following inspection by an immigration officer.

---

[1] On September 8, 2003, Yupangui was convicted of driving under the influence, leaving the scene of an incident, and driving without a license.  Then, on January 8, 2007, he was convicted of driving under the influence, driving without a license, and consuming or possessing alcohol in a motor vehicle.  And, on March 27, 2009, he was convicted of disorderly conduct following an incident involving the mother of his two oldest children.

But conceding removability was not necessarily the end of the road for Yupangui. Under certain circumstances, "an alien who is inadmissible or deportable from the United States" may apply for cancellation of removal and adjustment of status to that of a lawful permanent resident under 8 U.S.C. § 1229b(b). As relevant here, if an applicant like Yupangui satisfies four criteria, the Attorney General has discretion to grant such relief. For starters, an applicant must demonstrate (1) continuous physical presence in the United States for no less than 10 years in the period immediately preceding the application; (2) good moral character during that period; and (3) no criminal convictions on a specified list. 8 U.S.C. § 1229b(b)(1)(A)-(C). As most relevant here, an applicant must also establish (4) "that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1)(D);[2] *see Toalombo Yanez v. Bondi*, 140 F.4th 35, 39

---

[2] The full text of Section 1229b(b) provides:

(1) In general

The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien—

(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

(B) has been a person of good moral character during such period;

6

(2d Cir. 2025) ("The burden is on the noncitizen to prove that she 'satisfies the applicable [cancellation-of-removal] eligibility requirements' and 'merits a favorable exercise of discretion.'" (quoting 8 U.S.C. § 1229a(c)(4)(A)).

At the time, Yupangui had three minor children who were United States citizens, and so he was eligible to request cancellation of removal if he could check off all four boxes, including that at least one of his children would suffer "exceptional and extremely unusual hardship" by consequence of his removal. Accordingly, on September 6, 2013, Yupangui applied for cancellation of removal. He asserted that all three children would "suffer a lot" if he were deported to Ecuador because he was the "only financial support that they ha[d]." CAR at 808.

At a merits hearing on Yupangui's application on October 19, 2017, Yupangui offered testimony from himself and his oldest daughter in support of his application for cancellation of removal. He testified that he had never been married, but currently lived with a partner, and that they had an eight-year-old daughter who was living with them. He had two additional children, then aged 10 and

---

(C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and

(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

7

16, who lived with their mother, with whom he had a previous relationship. Yupangui testified that he paid child support for those two children, and they would stay with him two or three weekends per month. When asked whether his older children could be supported by their mother if he were to be deported to Ecuador, Yupangui testified that he didn't "think so," but was "not sure"; he thought that she "works in like cleaning, something like that," but he wasn't sure because he didn't "have a lot of communication" with their mother. CAR at 371. His daughter, who was then in 11th grade, then testified that if her father were deported, her life would "change drastically." *Id.* at 387. She explained that he provided financial support, as well as advice and emotional support. At the conclusion of the hearing, the IJ explained that, because the annual limit on grants of cancellation of removal had been reached for the fiscal year, she would reserve decision on Yupangui's application until additional grants became available the following year. *See* 8 U.S.C. § 1229b(e)(1) (limiting the number of available grants of cancellation-of-removal applications to 4,000 per fiscal year); 8 C.F.R. § 1240.21(c)(1) ("When grants are no longer available in a fiscal year, further decisions to grant such relief must be reserved until such time as a grant becomes available under the annual limitation in a subsequent fiscal year."). Once the hearing concluded, the IJ closed the record and placed Yupangui's case on her decision calendar.

On December 18, 2018, the IJ rendered an oral decision denying Yupangui's application for cancellation of removal. The IJ found that Yupangui failed to establish two of the four eligibility requirements

8

for cancellation relief. First, he had not demonstrated good moral character because of his "criminal history, including felony [driving while intoxicated] and criminal contempt and his disregard for the laws of the United States by continuing to drive without a license frequently over a period of many years." CAR at 322–23. Second, he had failed to show that his removal would result in the requisite "exceptional and extremely unusual hardship" to his three children. *Id.* at 323–25. Moreover, even if Yupangui had been eligible, the IJ held that he had failed to demonstrate that his case merited "cancellation of removal as a matter of discretion" given Yupangui's "blatant disregard for laws relating to the operation of motor vehicles and public safety." *Id.* at 325. The IJ accordingly ordered Yupangui removed to his native Ecuador.

Yupangui appealed the IJ's decision to the BIA. According to Yupangui, the IJ had abused her discretion by, among other things, failing to consider evidence regarding the hardship his children would suffer if he was deported. On March 2, 2021, the BIA adopted and affirmed the IJ's determination that Yupangui had not shown "that his removal would result in exceptional and extremely unusual hardship to his qualifying relatives, his three United States citizen children." CAR at 280. Each of those children would "remain in the United States with their respective mothers," and Yupangui had not shown that their mothers would be "unable to . . . provide for the children's basic needs." *Id.* The BIA found Yupangui's failure to show "exceptional and extremely unusual hardship" dispositive of his administrative appeal, so it declined to address the IJ's other bases

9

for denying cancellation of removal. The BIA therefore dismissed his appeal, and Yupangui did not seek judicial review of that decision.

Yupangui eventually obtained new counsel and, on June 1, 2021, filed a motion asking the BIA to reopen his removal proceedings. As pertinent here, Yupangui argued that the circumstances of his eldest daughter had "significantly changed" because a newly proffered psychological evaluation showed that she "would clearly suffer extreme and unusual hardship" if he were removed to Ecuador. CAR at 14. Yupangui submitted the evaluation in support of his motion to reopen, which was filed eleven days before that daughter turned 20 years old.

On April 20, 2023, almost two years later, the BIA denied Yupangui's motion, concluding that he "ha[d] not shown that the newly proffered evidence would likely affect the outcome of this case in reopened proceedings." CAR at 3. In reaching that conclusion, the BIA cited its longstanding practice of treating a cancellation-of-removal application as a "continuing application," making a child who was under 21 when her parent applied for cancellation of removal, but who had aged out by the time the application is adjudicated, no longer a "child" for purposes of 8 U.S.C. § 1229b(b)(1)(D).[3] *Id.* at 4 (citing *Matter of Isidro-Zamorano*, 25 I. & N.

---

[3] In its decision, the BIA erroneously referred to the definition of "child" under 8 U.S.C. § 1101(c)(1), which applies to Subchapter III of Chapter 12 of Title 8. It should have referred to the definition of "child" under 8 U.S.C. § 1101(b)(1), which applies to Subchapters I and II (in which § 1229b is located). CAR at 4. The BIA's mistaken citation does not, however, affect our analysis. Both provisions

Dec. 829, 831 (B.I.A. 2012)). The BIA acknowledged the hardship the daughter had experienced due to her father's immigration status, but it found that it could consider the alleged hardship only to his "qualifying relatives"—namely, his two other children still under the age of 21. *Id.* Because the BIA found that Yupangui had not provided new evidence showing that his other two children would suffer exceptional and extremely unusual hardship upon his removal, it denied Yupangui's motion to reopen.

On May 18, 2023, Yupangui filed a timely petition seeking our review of the BIA's decision, challenging only the BIA's determination that his eldest daughter had "aged out" of qualifying-relative status under § 1229b(b)(1)(D). The petition for review does not challenge the BIA's hardship determination as to Yupangui's younger children. In support of his petition, Yupangui argues that the statute is ambiguous as to whether a person can age out of qualifying-relative status during the pendency of an application for cancellation of removal, and that, under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the BIA's interpretation of the statute is due no deference. He further argues that in light of the ambiguity in the statute, and the agency's "undue delay" in processing his application for cancellation of removal, the Court should interpret § 1229b(b)(1)(D) to fix his daughter's age as of the date he filed his application for cancellation of removal, or the date of his merits

---

define "child" to include only those who are "under twenty-one years of age," and § 1101(b)(1)'s age restriction is the only part of the statutory definition pertinent to this appeal.

hearing before the IJ, or perhaps the date when evidence of his daughter's hardship was presented. Pet'r Br. at 16.[4]

## II. Discussion

Our jurisdiction over this case is provided by 8 U.S.C. § 1252(a) because, as the Supreme Court has held, "circuit courts have jurisdiction when an alien appeals from the Board's denial of a motion to reopen a removal proceeding." *Mata v. Lynch*, 576 U.S. 143, 147 (2015).

Things are a little more complicated because Yupangui's motion to reopen sought to revisit not the agency's underlying finding that he is removable, but only its denial of cancellation of removal—a form of discretionary relief. Congress has generally prohibited judicial review of such discretionary actions, and it has expressly listed denials of cancellation of removal pursuant to 8 U.S.C. § 1229b among those forms of relief that lie beyond the purview of courts to review. *See* 8 U.S.C. § 1252(a)(2)(B)(i) ("except as provided in subparagraph (D) . . . no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1229b . . . of this title . . . ."). But Congress has carved out an exception to that jurisdiction-stripping provision, allowing for judicial review of "constitutional claims or question of law" raised in

---

[4] Although Yupangui asserts that the BIA incorrectly concluded "that neither it nor the Immigration Court had *jurisdiction* to grant [his] application," Pet'r Br. at 20 (emphasis added), we decline to address this argument because the BIA did not refuse to consider his daughter's purported hardships on jurisdictional grounds. *See* CAR at 4.

12

a petition for review. *Id.* § 1252(a)(2)(D). Yupangui's sole argument turns on a question of statutory interpretation: whether the child of an applicant for cancellation of removal can "age out" of qualifying status under 8 U.S.C. § 1229b(b)(1)(D). This is a "question of law" that is reviewable; and because it involves an abstract legal question, it is "subject to *de novo* review." *Garcia Pinach v. Bondi*, 147 F.4th 117, 127 (2d Cir. 2025) (explaining that not all "questions of law" under § 1252(a)(2)(D) are subject to the same standard of review); *see also Naizhu Jiang v. Garland*, 18 F.4th 730, 734 (2d Cir. 2021) ("When considering a petition for review of an order denying a statutory motion to reopen, we review the BIA's conclusions of law *de novo*.") (citation omitted).

### A. Exhaustion of the "Aging Out" Issue

Yupangui's petition raises the threshold question of whether he was required to exhaust his argument—regarding the "aging out" of his eldest daughter—with the BIA before raising it in this petition for review. For its part, the Government contends that Yupangui was required do so. Because the BIA raised the aging-out issue for the first time in its ruling, after Yupangui moved to reopen his removal proceedings, we conclude that exhaustion of Yupangui's argument before the BIA was not a precondition to asserting it here.

To be sure, 8 U.S.C. § 1252(d)(1) provides that "[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." Although this issue-exhaustion rule is "not jurisdictional," *Santos-Zacaria v.*

13

*Garland*, 598 U.S. 411, 431 (2023), we must generally treat it as mandatory when the Government raises it, *see Ud Din v. Garland*, 72 F.4th 411, 419–20 (2d Cir. 2023). Here, the Government has raised the exhaustion issue by arguing that Yupangui "has not preserved any claim that the [BIA] should have accepted a different timeframe in his particular case for determining whether his daughter qualified as his 'child' under 8 U.S.C. § 1229b(b)(1)(D)." Resp. Br. at 22. So, we would ordinarily require that a party have brought this argument to the BIA before raising it in our Court.

However, in *Santos-Zacaria*, the Supreme Court invited us to consider a situation nearly identical to the one presented in this case, concerning an immigration petitioner "whose only issue for judicial review [was] one she had not raised previously because the Board's decision introduced the issue." 598 U.S. at 430. The Government contended that § 1252(d)(1) barred judicial review of the petitioner's claim "until after she pursues reconsideration" before the BIA. *Id.* The Supreme Court rejected that view as requiring a "worthless exercise," because "the statutory scheme [of the INA] contemplates that she immediately petition for judicial review of the Board's initial, preconsideration decision." *Id.* (citing 8 U.S.C. §§ 1252(b)(1), (6), 1229a(c)(6)(B)).

Applying the Supreme Court's cautionary instruction here, we recognize that it was the BIA that first raised the aging-out issue in its decision denying Yupangui's motion to reopen. Accordingly, Yupangui was not required to seek reconsideration of the BIA's decision on that issue in order to raise it on this petition for review.

14

The Government nevertheless argues that Yupangui was required to anticipatorily exhaust the aging-out question, even though it had never been raised by anyone (and indeed was inapplicable at that time, because his daughter was still under 21). According to the Government, Yupangui "could (and should) have anticipated that the Board likely would not have adjudicated his motion in time to remand the matter for an immigration judge to issue a final decision on any application prior to [his daughter] turning 21 years of age a mere 376 days after he filed his motion." Resp. Br. at 17. The Government bases this argument on two premises: (1) that Yupangui had already seen that the BIA took about 26 months to rule on his appeal from the IJ's denial of his application for cancellation of removal, and (2) settled BIA precedent had decided the aging-out issue years earlier. *Id.* (noting that *Isidro-Zamorano* had been decided in 2012).

We do not find the Government's arguments persuasive. For one thing, they are completely unresponsive to the Supreme Court's ruling in *Santos-Zacaria* that an immigration petitioner need not exhaust an issue that is first introduced by "the Board's decision." 598 U.S. at 430. The Supreme Court did not create an exception for cases where an immigration petitioner could have, or should have, guessed that the BIA would *sua sponte* raise a new issue that neither party had yet floated. Moreover, we are not convinced by the Government's suggestion that Yupangui should have realized that the BIA would not get around to ruling on his motion, and an IJ would not then adjudicate his application, within what the Government

15

breezily describes as "a mere 376 days." Resp. Br. at 17. Though we are fully cognizant of the substantial caseload faced by the immigration courts, it was not incumbent on Yupangui to assume that adjudication of his motion would take any particular amount of time, much less to predict *more than a year in advance* whether new legal issues might be injected into his case. The Government's suggestion—that Yupangui should have briefed issues that were neither raised nor relevant at the time—would seem to fit perfectly within what the Supreme Court characterized in *Santos-Zacaria* as a "worthless exercise." 598 U.S. at 430.

## B. Qualifying "Child" Under 8 U.S.C. § 1229b(b)(1)(D)

Moving to the merits, we note as a guiding principle that the faithful interpretation of a statutory provision begins with its text, read coherently and in context. *See Wisconsin Cent. Ltd. v. United States*, 585 U.S. 274, 277-78 (2018). Here, the text of 8 U.S.C. § 1229b(b)(1)(D) grants the Attorney General discretion to cancel removal proceedings for certain nonpermanent residents if (assuming other requirements are met) "removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child," who is either a U.S. citizen or a lawful permanent resident. As relevant here, the term "child" is definitionally limited to "an unmarried person under twenty-one years of age." 8 U.S.C. § 1101(b)(1).

The question we must answer is this: When is a child's age determined such that an IJ may weigh her alleged hardship for

16

purposes of adjudicating her parent's cancellation-of-removal application? Until now, our Court has not had occasion to answer that question, although it has come up before. *See, e.g.*, *Cruz v. Garland*, 2024 WL 1460131, *1–2 (2d Cir. Apr. 4, 2024) (summary order) (noting petitioner's presentation of the same aging-out arguments presented here, but not deciding the point because petitioner "abandoned any challenge to the BIA's conclusion that cancellation is a continuing application by not arguing that point"). We hold that § 1229b(b)(1)(D) requires a qualifying "child" to be under the age of 21 at the time an application for cancellation of removal is adjudicated.

This case was litigated following the BIA's decision in *Matter of Isidro-Zamorano*, in which the agency held that a qualifying child who turns 21 before the adjudication of her parent's application for cancellation of removal does not remain a qualifying relative under the hardship requirement of § 1229b(b)(1)(D). *See* 25 I & N. Dec. at 830-31. Although Yupangui acknowledges that *Isidro-Zamorano* is relevant BIA precedent, he contends that the BIA erred by not taking other factors into account in his case—namely, the purported ambiguity of § 1229b(b)(1)(D) as it relates to the aging-out issue and his contention that the delay in processing his motion to reopen harmed his case for reopening removal proceedings. The Government, for its part, argued in its initial briefing that the BIA's interpretation was entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), because it

was a "reasonable interpretation" of an ambiguous statutory provision. Resp. Br. at 15.

After the parties' briefing concluded, the Supreme Court in *Loper Bright* overruled the *Chevron* deference framework. So, we ordered supplemental briefing by the parties to hear their views about *Loper Bright*'s impact.

Yupangui contends that *Loper Bright* liberates this Court from deferring to the BIA's interpretation of the cancellation-of-removal statute and allows it to interpret § 1229b(b)(1)(D) in a way that fixes the age of Yupangui's non-qualifying child "as of the date he filed his cancellation of removal application," or perhaps "the date of his individual hearing," or perhaps "the date when the evidence of . . . hardship was presented." Pet'r Supp. Br. at 7. He does not offer any interpretive rationale for choosing any particular one of those dates in preference to the others; he appears content to have the agency settle on any date that would make him eligible for cancellation of removal.

The Government, by contrast, argues that even though *Loper Bright* removes *Chevron* deference from the equation of how our Court should interpret § 1229b(b)(1)(D), the BIA's interpretation remains the best reading of the statute: A cancellation-of-removal application is a "continuing application" such that a qualifying child's age is "properly considered at the time an application for cancellation of removal is decided." *Isidro-Zamorano*, 25 I. & N. Dec. at 830-31.

We agree with the Government. In reaching that conclusion, we exercise our "independent judgment" in weighing whether the BIA acted within its statutory authority when it affirmed that Yupangui's daughter was no longer a qualifying child for purposes of cancellation of removal when she turned 21 during the pendency of his application. *Loper Bright*, 603 U.S. at 412. We are persuaded by the BIA's conclusion that a request for cancellation of removal is best viewed as a "continuing application." *Isidro-Zamorano*, 25 I. & N. Dec. at 831 (internal quotation marks omitted).

We must consider the full text of 8 U.S.C. § 1229b(b)(1)(D) in order to determine the timing of its provisions. Recall that cancellation of removal is permitted only if "removal *would result* in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who *is*" a citizen or lawful permanent resident of the United States. 8 U.S.C. § 1229b(b)(1)(D) (emphasis added). There are two verbs in that phrase—"would result" and "is"—and we must read them in conjunction, and in the context of the entire subparagraph (D), to understand which moment in time is relevant. "Because words are to be given the meaning that proper grammar and usage would assign them, the rules of grammar govern statutory interpretation." *Nielsen v. Preap*, 586 U.S. 392, 407–08 (2019) (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 140 (2012)) (alteration adopted and internal quotation marks and citation omitted).

Start with "would result," in the longer phrase "removal result in . . . hardship." That verb ("would result") is in the

19

conditional mood. In context here, it denotes a hypothetical situation in which a certain condition (removal) needs to be met in order for a result to occur (hardship to a qualifying relative). The result must flow from the condition; if it were the other way around, it could not be the "result" of the condition. In the context of § 1229b(b)(1)(D), therefore, because the hardship must be the "result" of removal, the hardship must follow (not precede) removal.

What sort of hardship does the statute require? It must be a hardship "to the alien's spouse, parent, or child, who *is*" a United States citizen or lawful permanent resident. 8 U.S.C. § 1229b(b)(1)(D) (emphasis added). The verb "is"—which links the qualifying relationship (spouse/parent/child) to the qualifying status (citizen or lawful permanent resident)—appears in the present tense. Accordingly, the relative in question must, while the relationship with the applicant exists, contemporaneously have a qualifying status in the United States. And as relevant here, the statutory definition of a "child" for these purposes requires that the child be "an unmarried person under twenty-one years of age." 8 U.S.C. § 1101(b)(1).

Putting these all together, removal must *cause* a particular kind of hardship—a hardship that will arise only upon an applicant's removal—to a person *who at the time of removal* has all the attributes (relationship plus status) of a qualifying relative. In this case, that means that Yupangui was eligible to be considered for cancellation of removal only if, at the time of his removal, his eldest daughter was both unmarried and under 21 (making her a "child") and a U.S. citizen (giving her the requisite status). By the time the BIA

20

adjudicated his motion to reopen, she had exceeded the maximum age, and so Yupangui's (necessarily future) removal no longer "would result" in hardship to a qualifying relative. 8 U.S.C. § 1229b(b)(1)(D). Thus the procedural delay has had the effect of assuring there will be no exceptional hardship to a qualifying relative.

In reaching this conclusion, we agree with the Tenth and Eleventh Circuits, which are the only other courts of appeals to have considered this issue since *Loper Bright*.[5] *See Rangel-Fuentes v. Bondi*, No. 23-9511, 2025 WL 2750691, at *4 (10th Cir. Sept. 29, 2025); *Diaz-Arellano v. U.S. Att'y Gen.*, 120 F.4th 722, 725 (11th Cir. 2024). As the Eleventh Circuit explained, "[i]f an applicant is proceeding based on exceptional hardship to a child, this means that there must be a child—an unmarried person under the age of twenty-one—when the final decision on cancellation of removal is made. It is not enough that there was once a child who would have suffered hardship when the alien first applied for relief." *Diaz-Arellano*, 120 F.4th at 725. That is because the cancellation-of-removal statute "directs immigration judges to examine the effect of the applicant's 'removal.'" *Id.* And that effect "on the listed relatives depends on the state of the world at the time of that removal—not at some earlier date," meaning that "[a]n alien's removal would not cause hardship to her parent if the parent is deceased at the time she is removed. Nor would the alien's removal cause hardship to a spouse if the couple has divorced during the pendency of immigration proceedings." *Id.* at 725–26. We

---

[5] We note that the Ninth Circuit has reached the same conclusion, though its decision was issued before *Loper Bright* and premised on *Chevron* deference. *See Mendez-Garcia v. Lynch*, 840 F.3d 655, 663–64 (9th Cir. 2016).

agree. "The statute offers no reason to conclude that Congress prioritized relief for aliens whose removal would have caused exceptional hardship in the past over those whose removal would cause exceptional hardship to a qualifying relative *now*." *Id.* at 726.

We also join in the Eleventh Circuit's observation that the "present-tense determination will cut both ways," sometimes making it easier for an immigration petitioner to obtain cancellation of removal. *Id.* "Babies will be born; couples will marry. And immigration judges may—in fact, must—consider hardship to these newly qualifying relatives." *Id.* Indeed, as the BIA explained in *Isidro-Zamorano*, treating an application for cancellation of removal as a "continuing application" allows the agency to take account of certain late-arriving factors that might assist a petitioner's claim. 25 I. & N. Dec. at 831. For example, because the ten-year window for establishing good moral character is counted backward from the date of adjudication, a person's old bad acts "may fade in significance" as time rolls forward. *Matter of Ortega-Cabrera*, 23 I. & N. Dec. 793, 797–98 (B.I.A. 2005), *cited in Isidro-Zamorano*, 25 I. & N. Dec. at 831.

Nevertheless, Yupangui contends that even if his eldest daughter has aged out for purposes of § 1229b(b)(1)(D), "the undue delay" in the processing of his application "compels the BIA to interpret [that statute] in a way that would have fixed the age of [his] eldest child as of the date he filed his cancellation of removal application," or at some other point before his daughter turned twenty-one. Pet'r Br. at 16. We are unpersuaded.

22

For one thing, the statute means what it means. Whether the BIA took more or less time to adjudicate any particular application cannot change the inherent meaning of the statute. Yupangui points to no authority (and we are aware of none) allowing the BIA to "interpret" § 1229b in different ways in different cases, much less authorizing it to do so depending simply on how much time it takes to decide a given matter. Nor does he identify any authority authorizing the BIA to make equitable exceptions to otherwise applicable statutory requirements.

Second, to the extent that Yupangui relies on *Isidro-Zamorano* to argue that the BIA recognizes an implied exception to § 1229b(b)(1)(D)'s temporal eligibility requirements, that argument is based on an overreading of that decision. True, in *Isidro-Zamorano*, the BIA noted in passing that the respondent had not "alleged any improper delay on the part of the Immigration Judge." 25 I. & N. Dec. at 832. But the BIA did not say that if an improper delay had been alleged, that would have influenced its ultimate conclusion that "the respondent did not have a qualifying relative when the Immigration Judge adjudicated the application and therefore could not establish eligibility for relief." *Id.* at 831. Instead, the BIA found "no basis in law to conclude that an applicant in the respondent's circumstances, who loses his qualifying relationship before his application is even adjudicated on its merits by the Immigration Judge, nonetheless retains his eligibility for cancellation of removal." *Id.* In short, the BIA did not suggest that a delay in adjudicating a motion to reopen would change the cancellation-of-removal calculus.

23

We also find inapt Yupangui's reliance on *Martinez-Perez v. Barr*—a case that predated *Loper Bright*—where the Tenth Circuit agreed with an immigration petitioner that the BIA "had *jurisdiction* to entertain an alternate interpretation of when a child's age is to be assessed for cancellation." 947 F.3d 1273, 1282 (10th Cir. 2020). The BIA in the present case never suggested that it lacked "jurisdiction" over Yupangui's application, much less that it lacked "jurisdiction" to consider any argument about how to interpret § 1229b(b)(1)(D). Instead, it simply held that Yupangui was no longer eligible for cancellation of relief on the merits. That conclusion, as we have explained above, was correct.[6]

We offer one final observation. Yupangui generally argues that the BIA's delays in processing his application for cancellation of removal prejudiced him. It is true that, because of the passage of time

---

[6] It may be possible to read parts of *Martinez-Perez* to suggest that if the BIA had exercised its jurisdiction to consider the aging-out question, it would have had leeway to construe § 1229b(b)(1)(D) in different ways in different cases. *See, e.g.*, 947 F.3d at 1281 ("*Isidro-Zamorano* left open the possibility that, given a different set of facts, the BIA may interpret § 1229b(b)(1)(D) in a different way."). If that is what the Tenth Circuit meant, we disagree. Any such suggestion seems to be a relic of the *Chevron* era. *Id.* at 1282 (remanding because the BIA "failed to exercise its interpretive authority"). Moreover, in support of this proposition, the Tenth Circuit cited the Supreme Court's decision in *INS v. Cardoza-Fonseca* for the proposition that "the BIA has the authority to give ambiguous statutory terms 'concrete meaning through . . . *case-by-case* adjudication.'" *Id.* (quoting *Cardoza-Fonseca*, 480 U.S. 421, 448 (1987) (emphasis added in *Martinez*)). But in that passage, the Supreme Court was simply illustrating how agency interpretation of statutes can develop through, among other things, adjudication as well as rule-making. We do not read the Supreme Court as having encouraged agencies, even during *Chevron*'s halcyon days, to flit among different statutory interpretations depending on the facts of any particular case.

between the filing and adjudication of his motion to reopen, Yupangui is no longer eligible for cancellation of removal based on hardship to his oldest child. But as the Eleventh Circuit aptly observed in *Diaz-Arellano*, "the applicant is really only a subsidiary beneficiary of the statute's protections, which are designed to safeguard the child, spouse, or parent" of a person seeking cancellation of removal. 120 F.4th at 726 n.4. Because of the time it took for the BIA to rule on Yupangui's motion to reopen, and now the time that has elapsed due to Yupangui's petition for review, his daughter is currently 24 years old, and he has remained in the United States all the while. To the extent that § 1229b is designed to mitigate harm to minor children that would flow from a parent's removal, such mitigation ran its course in this case as a consequence of the BIA's processing times.

## III. Conclusion

In sum, we hold as follows:

1. The question of whether Yupangui's child had "aged out" of qualifying-relative status was raised *sua sponte* by the BIA, for the first time, in its decision denying Yupangui's motion to reopen. Accordingly, Yupangui's failure to exhaust that issue before the agency does not bar him, under 8 U.S.C. § 1252(d)(1), from raising it before this Court in this petition for review.

2. Under 8 U.S.C. § 1229b(b)(1)(D), a qualifying "child" must be under the age of 21 at the time an application for

cancellation of removal is adjudicated. Yupangui's daughter turned 21 during the pendency of his motion to reopen his removal proceedings, and so the BIA did not err in denying that motion on the ground that she was no longer a qualifying relative for purposes of his eligibility for cancellation of removal.

For the foregoing reasons, the petition for review is DENIED.